**In the Matter of Sam James Recile, Bankrupt.**

**Sam James RECILE, Bankrupt, Appellant,**

**v.**

**Albert J. WARD, Jr., Trustee for Southern Land Title Corporation, etc., et al., Appellees.**

No. 73-1648.

United States Court of Appeals, Fifth Circuit.

June 24, 1974.

James J. Morrison, James J. Morrison, Jr., New Orleans, La., for appellant.

John Pat Little, Charles Schwartz, Jr., New Orleans, La., for Albert Ward, Trustee, So. Land, Plaza Tower &. Co-Trustee G. Brian Corp.

Edward M. Heller, New Orleans, La., for Dorothy R. Cowen, Trustee for Recile.

Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., for U.S.A.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Sam Recile, the bankrupt-appellant, appeals from an order of the referee dated November 3, 1971, and from an order of the district court denying a petition to review that order. The referee's order denied Recile's motion that his discharge in bankruptcy be issued nunc pro tunc effective April 22, 1969, and extended the time for filing objections to Recile's discharge until November 30, 1971. We affirm the referee and the district court.

### I.

Recile was adjudicated a bankrupt by order of the district court, entered January 12, 1968. The first meeting of creditors was held April 15, 1968. Acting under the statutory provision then in effect, 11 U.S.C. § 32(b) (1970),[1] the court fixed October 21, 1968, as the last day for filing objections to the bankrupt's discharge. On October 21, again acting under 11 U.S.C. § 32(b) (1970), the referee extended the deadline date for filing objections to April 21, 1969. No objections were filed to Recile's discharge by his trustee, his creditors, or by any other interested party by April 21. No request was made before April 21 for a further extension of the deadline, and no order extending the deadline further was ever entered. Nevertheless, for reasons not apparent from the record, no order was ever entered granting Recile's discharge.

1. Section 14(b) of the Bankruptcy Act, 11 U.S.C. § 32(b) (1970), provided:

> (b) (1) The court shall make an order fixing a time for the filing of objections to the bankrupt's discharge and a time for the filing of applications pursuant to section 35(c)(2) of this title to determine the dischargeability of debts, which. time or times shall be not less than thirty days nor more than ninety days after the first date set for the first meeting of creditors. Notice of such order shall be given to all parties in interest as provided in section 94(b) of this title. The Court may, upon its own motion or, for cause shown, upon motion of any party in interest, extend the time or times for filing such objections or applications.
>
> (2) Upon the expiration of the time fixed in the order for filing objections . . . by the court, the court shall discharge the bankrupt if no objection has been filed and if the filing fees required to be paid by this title have been paid in full . . .

This provision has been superseded by provisions of Rule 404 of the new Rules of Bankruptcy Procedure. Section 14(b) was. effective at the time of and governed the proceedings below, and supplied the procedural rules applied by the referee. The new Rule, however, governs our decision here, since by order of the Supreme Court, the new rules govern proceedings which were pending at the time of the adoption of the rules, except where their application would be infeasible or would work injustice.

Applying the new rule rather than the old does not affect the outcome of this case, since the provisions of the two are substantially identical in all respects material to this case. Rule 404 provides in relevant part:

> (a) *Time for Filing Complaint Objecting to Discharge.* The court shall make an order fixing a time for the filing of a complaint objecting to the bankrupt's discharge under § 14c of the Act. The time shall be not less than 30 days nor more than 90 days after the first date set for the first meeting of creditors.
>
> (c) *Extension of Time.* The court may for cause, on its own initiative or on application of any party in interest, extend the time for filing a complaint objecting to discharge.
>
> (d) *Grant of Discharge.* On expiration of the time fixed for filing a complaint objecting to discharge, the court shall forthwith grant the discharge unless (1) a complaint objecting to the discharge has been filed, (2) the bankrupt has filed a waiver under Rule 405, (3) it appears that the bankrupt has failed to attend and submit himself to examination at the first meeting of creditors or at any meeting specially called for his examination, or (4) the prescribed filing fees have not been paid in full.

The matter apparently lay dormant in that posture for over two years; the bankrupt did nothing to secure his discharge, and the creditors did nothing to obtain a formal extension of time. Activities did not begin anew in the case until June 15, 1971, when a report by the firm of Laport, Girot, Sehrt & Roney, certified public accountants, was completed. The report presented the results of an examination undertaken in conjunction with Chapter X reorganization proceedings concerning several corporations controlled by Recile, including the Southern Land Title Corporation and its subsidiaries, G. Brian Corporation, and Plaza Towers, Inc. The reorganization proceedings were then pending before the same district judge who was hearing this, individual bankruptcy proceeding. The report allegedly revealed that Recile owed over three million dollars to the corporations, which he had never previously listed among his creditors in the schedules submitted in the individual bankruptcy proceeding.

This report was delivered to Albert J. Ward, the trustee for the Recile corporations and the appellee here, August 3, 1971. Before that, on July 26, Recile had filed a formal motion before the referee requesting that his discharge be issued him under 11 U.S.C. § 32(b). On August 2, the referee responded to Recile's motion by issuing an order and notice to all creditors fixing a hearing on the motion for a discharge September 1, 1971, and requiring all parties wishing to oppose the motion to show cause then why the bankrupt should not be discharged. On August 25, 1971, Recile moved to dismiss, recall, and suppress the show cause order, on the grounds that the Bankruptcy Act and the then effective General Orders of the Supreme Court in Bankruptcy did not contemplate such a procedure but rather made the issuance of discharge a matter of course when the deadline for filing objections passed. On the same day, the appellee,

Ward, filed objections to Recile's discharge on behalf of the three corporations for which he was trustee. Two other creditors, the National American Bank of New Orleans, and the Bankers Union Life Insurance Co., also filed objections on the same day.[2]

The refereee denied Recile's motion to dismiss, suppress, and recall, and proceeded with the hearing on Recile's motion for discharge September 1. The sole witness called at that hearing was the Honorable Edmund E. Talbot, the referee who had heard the case in April 1969. Judge Talbot was an experienced and highly respected referee for the District Court for the Eastern District of Louisiana. After 36 years of service as referee, he retired on July 1, 1969. On direct examination, Recile's counsel sought to elicit testimony from Judge Talbot to establish that the failure to enter Recile's discharge in April 1969 had been the product of mere clerical error. Over the objection of the creditors' counsel, Judge Talbot gave this description of the process by which discharges were ordinarily issued:

> Well, ordinarily in a bankruptcy the last two orders issued in a bankruptcy estate are the order of discharge and the order closing out the case. A discharge volume, a book, is kept by the clerk's office. All discharges as of a certain date, say within a month, are listed which are to arise—are listed in that book and if the cases are closed out, then the clerk fills in these discharges and sometimes presents fifty or sixty of them for my signature.
>
> If there a continuation or if there's an objection or in the old days if the costs weren't paid a notation was made against that name and number and it was excluded from the list of discharges which I was to sign.

Judge Talbot further testified that "in the normal course of events" the Recile discharge would have been presented to him "at some reasonably subsequent

---

**2.** National American and Bankers Union subsequently withdrew their claims against Re-

cile. Accordingly, they have no interest in this appeal, and have not participated in it.

time" to April 22, 1969. He testified that the additional time would be needed because "[i]t would take the clerical help some time to get down all the cases, draw the discharges, and check the records to be sure that I was entitled to sign them". Judge Talbot implied that no such record search had ever been made in Recile's case.

Judge Talbot's testimony was more significant for what it did not establish than for what it did. In particular, his testimony made it clear that in April 1969 he had *not* decided the Recile case. He did *not* testify he had taken all steps necessary to find Recile entitled to a discharge. Thus he did not say or imply that the failure to grant the discharge was *entirely* the result of clerical error only. Rather he testified that it was his assumption that the matter was continuing at the time the record deadline for filing objections passed.[3] We have already noted from his testimony that a check of the records had to have been made before the discharge would have been presented to him for his signature, and that apparently no such check was ever made in Recile's case. Beyond and more important than that, Judge Talbot testified:

> Q. Was there any extra work or burdens in your office on your staff incident to your imminent retirement at that time?
>
> A. I think it was rather obvious that there was. Everyone in this courtroom nearly was presenting petition for fees, petitions to cancel liens, I was serving as master in many Chapter X matters incident to the Recile bankruptcies and I think up until the last day I was having hearings, signing orders, fixing fees, and I frankly wasn't aware of the status of Recile's discharge under any circumstances. I—as a matter of fact, I

was so sure that it had been continued and would be definitely heard in the future that I asked someone long after I retired.— I've asked several people that are familiar with this case

.    .    .    .    .    .

On cross examination by the creditors' counsel, Judge Talbot testified that he "just would have assumed this thing not being fully administered, that somebody would have come in and asked for an extension", and that he "thought perhaps that was the reason why this one case was left out of the discharge—off the discharge list on April 21st". Noting that characterizing the case as "very unusual and complex" would be "putting it mildly", Judge Talbot said that "a host of people connected with this case was under the impression that an order of extension had been granted".

Counsel for the creditors sought to determine whether there might have been an *extension* granted but not recorded because of clerical error. Judge Talbot admitted that he had occasionally granted extensions orally or otherwise informally, but said it was "entirely speculative" whether he had done so in this case.

The referee announced his findings of fact, conclusions of law, and orders in an opinion issued November 3, 1971. The referee denied Recile's motion for discharge, and his motion to recall, dismiss, and suppress the show cause order, and extended the date for filing objections until November 30. The referee found that Recile's discharge date had never been formally continued after April 21, 1969, that the bankrupt had never been granted his discharge, that the court had never been made aware of the grounds for opposing his discharge until August 25, 1971, and that the court had never considered the question of the bankrupt's discharge. The ref-

---

3. These considerations underlay the referee's conclusion of law to the effect that the granting of a discharge is a judicial function and his further conclusion that the court should not grant a discharge until it has considered the merits of a bankrupt's claim that he has a right to a discharge.

eree held as matters of law that the court had discretionary authority to extend the deadline for filing objections either before or after the time originally fixed had expired; that no formal order was necessary to extend the time for filing oppositions; that a discharge is pending before the court until it is granted; that the granting of a discharge is a judicial function; that the parties opposing Recile's discharge had not been guilty of laches, and that a discharge should not be granted until the Court had considered the question of the bankrupt's right to a discharge. The district court denied Recile's petition for review of this order March 15, 1968.

On appeal, Recile's principal arguments are that the referee erred in denying him entry of judgment issuing his discharge *nunc pro tunc*, and erred in holding himself empowered to grant an extension of the time for filing objections after the time originally set had elapsed. He also raises several other, lesser contentions. We take up the two major contentions first.

## II.

■■ We hold that Recile was not entitled to entry of a judgment granting his discharge nunc pro tunc. Recile's assertion rests on the principle that such entry is appropriate where judgment "though formally pronounced, ha[s] from accident or from negligence of the clerks never been put on record". Freeman on Judgments § 122 (5th ed. 1925); see, e. g., United States v. Chicago & A. R.Co., 7 Cir. 1918, 162 C.C.A. 273, 250 F. 101. But it is also the rule that

> . . . the entire purpose of entering judgments and decrees as of some prior date is to supply matters of evidence, and not to supply or modify matters of fact. The failure of a court to act, or its incorrect action, can never authorize a nunc pro tunc entry. If a court does not render judgment, or renders one which is imperfect or improper, it has no power to remedy any of these errors or omissions by treating them as clerical misprisions.

Freeman on Judgments § 131; see Gray v. Brignardello, 68 U.S. (1 Wall.) 627, 17 L.Ed. 693. And the burden is on the party seeking nunc pro tunc entry where no judgment has been recorded to prove that the failure to record is the result wholly of clerical misprision, rather than of the failure of the court to act.

■ Recile failed to carry this burden. On the basis of Judge Talbot's testimony, as well as of the entire record, we hold that the referee's finding of fact that the court had never considered the question of Recile's right to a discharge was not clearly erroneous. That finding was tantamount to a finding that the failure to enter judgment in April 1969 was the result of the court's failure to act, and not of clerical error.

■ The question whether the trial judge was empowered to grant a further extension of time for filing objections is one separate from the question whether entry of judgment nunc pro tunc was appropriate, but it is one that also must be decided unfavorably to Recile. Bankruptcy Rule 404(c) provides that "[t]he court may for cause, on its own initiative or on application of any party in interest, extend the time for filing a complaint objecting to discharge". This provision is to be liberally construed:

> Because of the importance which should be attached to encouraging interested parties to oppose a discharge where there [are] reasonable grounds to suspect that an objection exists, this discretionary power to extend the time for objections should be liberally construed.

1A Collier on Bankruptcy ¶ 14.06 (14th ed. 1974).

Ample case law support the proposition that the provision conferring the referees' discretion to extend the time for filing extensions must be broadly read. In In re Massa, 2 Cir. 1943, 133 F.2d 191, the bankrupt attacked the referee's judgment refusing a discharge,

arguing that the objections forming the basis of the refusal were filed out of time. The objections had been filed out of time, but the referee had allowed them to be filed and had proceeded to hold hearings on them. The Court of Appeals for the Second Circuit held that the referee's holding of the hearings and his acceptance of the objections were evidence that he had extended the time for filing the objections. In Rameson Brothers v. Goggin, 9 Cir. 1957, 241 F. 2d 271, the Ninth Circuit held that technical errors in the papers granting an extension did not bar filing objections, because the referee could permit late filing of the papers, even without a formal extension. In In re Wiedemeyer, E.D. N.Y.1940, 32 F.Supp. 809, the court held that where the illness of the creditor's clerk had prevented the timely filing of an objection, but the discharge had not yet been granted, the referee could allow the papers to be filed out of time. See also In re Legon, S.D.N.Y.1949, 85 F. Supp. 946 (referee has discretion to extend time without filing a formal order granting an extension).

In accordance with the principle that the power to extend the time for filing objections should be liberally construed, we hold that the referee was correct in his conclusion of law No. 1, that the Court has discretionary authority to extend the discharge date either before or after the expiration of the deadline originally set.

Finally, there remains the question whether this power was properly exercised in this case. Concededly, that question is closer in this case than it was in any of the cases we cited above. In those cases, the objections were filed shortly after the expiration of the deadline, usually within a few days. In this case, two and one-half years elapsed between the passing of the deadline and the filing of the objections. In those cases, where no formal order extending the deadline had been entered, there at

least were always clear indications that the referees had reached an explicit decision that the time should be extended; for example, in *Massa* the referee held hearings and in *Rameson Brothers* the referee had entered papers intended to grant an extension. In this case there was scant evidence that the referee had explicitly decided to extend the time; the referee, although he testified that he had had a vague understanding that the case had been continued, also testified that to have concluded there had been an unrecorded order extending the time was entirely "speculative".

Nevertheless, we conclude that the referee did not abuse his discretion in allowing the trustee of the corporations controlled by the bankrupt to file their objections after $2\frac{1}{2}$ years. There was substantial evidence that the failure to grant an extension was the result of mere oversight or misunderstanding, on the part of either the referee or the parties. This was a complex case, as this Court well knows from related cases, and it is easy to understand Judge Talbot's assuming that the discharge date had been continued somehow, or upon someone's request. The bankrupt's failure, over two and one-half years, to come forward to request his discharge, until after evidence creating grounds for objections had been uncovered, reinforces the impression that there was a general understanding that Recile had not been discharged, that he had never become entitled to be discharged, and that the case was an open and continuing one. In these circumstances, the referee had reason to grant even the admittedly very late extension of time for filing objections.

III.

Recile's remaining contentions are founded upon a misapprehension concerning what rules of procedure govern this case. Rule 6(b)(2) of the Federal Rules of Civil Procedure permits

district courts to allow any acts required by those Rules to be done within a specified time to be performed out of time upon a showing of "excusable neglect" on the part of the party required to perform the act. Recile argues that the referee had no power to extend the time for objections without a showing of "excusable neglect" of the kind this Rule contemplates. He also spends considerable effort arguing that the evidence did not support a finding of excusable neglect, or freedom from laches, and in arguing that certain items of evidence relevant to the issue were not properly introduced as evidence and made matters of record. All these contentions are without merit, of course, since bankruptcy proceedings are not governed by the Federal Rules of Civil Procedure, and Rule 6(b)(2) is therefore irrelevant. See F.R.Civ.P. 1, 81(a)(1), 28 U.S.C. Section 14 of the Bankruptcy Act, 28 U.S.C. § 32 (1970), the procedural rule in effect at the time of the referee's decision, and Rule 404 of the Bankruptcy Rules, the provision now in effect, do not make the granting of extensions out of time dependent upon a showing of "excusable neglect".

Rule 6(b)(2) and the question of excusable neglect aside, however, Recile suggests that an extension in this case still would not be proper unless the creditors were not guilty of laches, and that evidence did not support the referee's ruling, included in the opinion as a conclusion of law, that the objecting creditors were not guilty of laches. We question the validity of the suggestion that laches on the part of the potential objecting creditors would as a matter of law defeat the power of the referee to extend the period for filing of objections after the date originally set had passed. We need not decide the merits of that suggestion, however, since we find that the record as a whole amply supports the referee's judgment that the creditors were not guilty of laches.

Affirmed.