In the Matter of **PLANTATION MANOR RESTAURANT OF HOUMA, INC., Debtor.**

**WENHOPE ASSOCIATES, Movant,**

v.

**PLANTATION MANOR RESTAURANT OF HOUMA, INC., Respondent.**

**Bankruptcy No. TX84–48.**
**Adv. No. CMS 84–480.**

United States Bankruptcy Court,
E.D. and W.D. Arkansas.

Dec. 21, 1984.

---

John C. Calhoun, Jr., Owens, McHaney & Calhoun, Little Rock, Ark., for movant.

Charles W. Baker, Rose Law Firm, Little Rock, Ark., for respondent.

## ORDER GRANTING MOVANT RELIEF FROM THE AUTOMATIC STAY EFFECTIVE JANUARY 19, 1985

DENNIS J. STEWART, Bankruptcy Judge.

The matter of the motion of Wenhope Associates for relief from the automatic stay came on before the court for hearing on December 19, 1984, in Little Rock, Arkansas, whereupon the movant appeared by counsel, John C. Calhoun, Esquire, and the respondent debtor also appeared by counsel, Charles W. Baker, Esquire. It was then shown to the court that, in prior proceedings held on the movant's motion for relief from the automatic stay with respect to the debtor's motel property in Houma, Louisiana, the Honorable Frank P. Barker, Jr., conducted a hearing on September 19, 1984, and, based on evidence then presented to him, issued an order denying the requested relief from the automatic stay on conditions which were detailed in the order. These conditions re-

quired the payment of insurance premiums by the debtor, the payment of taxes by October 10, 1984, the opening of the motel complex for business and the commencement of making of some $200,000 in improvements, and the making of monthly payments of $8103 to Wenhope. It was further demonstrated to this court that the order of September 24, 1984, unequivocally provided for "immediate" relief from the automatic stay in the event of debtor's failure to perform the abovementioned conditions; that the debtor has performed the conditions only in that it made a $20,000 initial payment to Wenhope plus one month's insurance payment; that, otherwise, it has failed to perform any of the conditions imposed by Judge Barker's order of September 24, 1984; that, according to the testimonial contentions of Oddie Hebert, made in the hearing of December 20, 1984, the reason for debtor's noncompliance with Judge Barker's order of September 24, 1984, was that the movant commenced shortly after September 24, 1984, to register in Houma, Louisiana, certain preexisting judgments against the two principal insiders of the debtor—Mr. Hebert himself and one Roell; that, in doing so, movant employed the attorney of a bank from which debtor was seeking to borrow some of the money needed to perform the conditions; that the registration of the judgments also "dampened" negotiations to obtain credit from another potential lender, Continental, Inc.; that it thereby became impossible to perform the conditions fixed by Judge Barker; that a reasonable period of time of 60 days should now therefore be permitted in order to allow the debtor to sell the motel property; and that he has received three expressions of interest from potential purchasers which may materialize within the next 60 days.

Based on this set of material facts, it is the contention of the debtor that, because of a change in circumstances effected by the movant's registration of the judgments against Hebert and Roell, the order entered by Judge Barker on September 24, 1984, should now be altered or

amended so as to grant a 60-day extension of the automatic stay. It is contended that the registration of the judgments by movant made the debtor's performance of the conditions of Judge Barker's order impossible. But impossibility of performance is not a cognizable defense when the duty imposed or undertaking contracted is absolute even though the relevant change in circumstance was foreseeable at the time the duty was imposed. In order to invoke the doctrine of impossibility or impracticality, "a contingency—something unexpected—must have occurred." *Transatlantic Financing Corp. v. United States,* 363 F.2d 312, 315 (D.C.Cir.1966). And, even though the pre-existing judgments against Hebert and Roell were known of prior to the proceedings before Judge Barker on relief from the automatic stay, the order which is now sought to be amended provided in absolute terms that, for any failure to meet any of the conditions imposed by it, relief from the automatic stay was to be "immediate."

Under the majority version of the law, under such circumstances, the undersigned must regard himself as bound by the absolute terms of the order entered by Judge Barker, which necessarily override any potential excuse for failure of condition insofar as those terms purport to require immediate and automatic relief from the automatic stay for failure of any such condition. "The rule in most of the national courts that have passed on the question is that where a judge ... or a judge assigned to a ... Court, while a case is on his calendar, renders a decision and makes a judicial order in such case, and thereafter the case is transferred to another judge of the same court, the latter judge should respect and not overrule such decision and order." *Stevenson v. Four Winds Travel, Inc.,* 462 F.2d 899, 904–905 (5th Cir.1972). This clear rule finds its foundation in reason and common sense. A party aggrieved by one judge's ruling has a proper remedy by means of appeal to a properly-constituted appellate tribunal; the review and amendment or reversal of one coordinate judge by another can only stultify the law

and cheapen the judicial process, encouraging litigants, at least, to indulge in a form of forum shopping which would exploit and dramatize the philosophical differences among co-equal judges and, at worst, may produce baseless allegations against judges as a means of achieving their disqualification in order to use such coordinate review as a substitute for appeal. The crippling potential for justice is obvious. "It is a judge's duty to decide all cases within his jurisdiction and 'he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.'" *Campbell v. Supreme Court of Florida,* 428 F.2d 449, 451 (5th Cir.1970), quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). So it may be concluded that there is a firm basis for this version of the rule which prohibits a transferee judge from reviewing and overruling the decision of another coordinate judge, regardless of the merit of the former decision. This court, for this reason and, further, on the basis of courtesy to a coordinate judge and respect for his decisions, must elect to follow this rule and leave Judge Barker's ruling undisturbed.

There is admittedly a more qualified version of the rule which permits one judge to review his equal's decision under extraordinary circumstances. "(T)he Ninth Circuit holds that the question of whether a ... Judge may review and overrule a judicial decision theretofore made in the same case by another (equal) judge is a matter of judicial discretion, and if a ... Judge does overrule such a decision, the question is whether he abused his discretion in so doing." *Stevenson v. Four Winds Travel, Inc., supra,* at 905, n. 4. But even the decisions of that circuit recognize that "one judge should not overrule another except for the most cogent reasons ..." *United States v. Desert Gold Mining Co.,* 433 F.2d 713, 715 (9th Cir.1970). "(J)udges should not, if possible, place themselves in a position whereby in rendering impartial judgment on a question they might be required to overrule the decision of a judge of the same court in the same case." *United*

*States v. Wheeler,* 256 F.2d 745, 747 (3d Cir.1958). Thus, ordinarily, when the second judge is called upon to review the same facts as the first judge, and the second decision is based upon the same facts, the decision overruling the first decision is "an abuse of discretion." *Id.* at 748. In substance, that is the matter at bar, in which the absolute order entered by Judge Barker on September 24, 1984, leaves no room for the undersigned now to qualify its terms. The very absolute character of its material terms necessarily rejected any foreseeable happening as a basis for modification of the order. And the evidence which the undersigned heard, in the hearing conducted on December 19, 1984, consequently, was, in material respects, only a resonance of the evidence initially heard by Judge Barker on September 19, 1984. Judge Barker's order of September 24, 1984, was necessarily rendered with a view to the possibility that the debtor might not, by reason of disclosure of the liabilities of its principal insiders, be able to obtain the funds necessary to perform its conditions. And all that the actions of the movant, in registering its judgments against Hebert and Roell actually accomplished was the notification of the potential lenders of the true financial status of the principals of the debtor. Regardless of the fairness or propriety in so doing, it must be concluded that Judge Barker's order was issued in contemplation of the possibility that the debtor would fail to obtain financing because of an honest disclosure of its financial resources to potential lenders. Under the foregoing authorities, therefore, the undersigned may not review it.

Nor may it be said that the undersigned may, short of overruling the prior decision, transmute its times so as to keep the automatic stay in effect. Judge Barker's decision necessarily contemplated that, at some point, the debtor might have to give up its plans for reopening the motel business. And the only provision made in such a circumstance in Judge Barker's order is that of "immediate" relief from the automatic stay. Any reasonable construction of his order leads to a conclusion that time was to be of its essence, for unequivocal and immutable deadlines were established by its terms, which this court cannot, under the foregoing principles, vary.

Further, even if it could be said that a successor judge had in some fashion a discretion to review the times established by Judge Barker in his order of September 24, 1984, the provision for the "immediate" grant of relief from the stay upon any failure of condition could not be revised. Judge Barker, in conditioning the keeping of the automatic stay in effect, utilized the authority found in section 362(d)(1) of the Bankruptcy Code, which warrants such conditioning "for cause." In other contexts, when a court fixes time limits "for cause" and without other limitations imposed by statute or rule,[1] a great latitude of discretion has ordinarily been recognized. For example, in determining whether an extension of time to file objections to discharge should be granted "for cause," the reviewing courts have formerly[2] permitted the bankruptcy courts a great ambit of discretion. Thus, the bankruptcy courts have been permitted to grant such extensions of time on their own initiative,[3] before or after the time initially fixed for the

1. There is no explicit limitation in section 362(d)(1) itself as to the time limits throughout which a conditioning of the stay may last. Former Rule 404(c) of the Rules of Bankruptcy Procedure seems analogous in this particular respect insofar as it grants the bankruptcy court power to extend the time for filing objections to discharge "for cause."

2. Current Rule 4004(b) of the Rules of Bankruptcy Procedure is distinguishable from its former counterpart, see note 1, *supra,* in that it imposes time limitations and when the request

for extension must be filed and, consequently, abolishes the power of the court to act any time and on its own initiative.

3. See Rule 404(c) of the Rules of Bankruptcy Procedure. The bankruptcy court is, of course, not authorized to modify the stay *sua sponte* because of the letter of section 362(d)(1), which requires a motion of a party in interest, notice and a hearing. But this factor is mentioned only to evidence the great discretion ordinarily accorded when the key words are "for cause."

filing of objections to discharge,[4] and even after a discharge has purported to be entered,[5] with or without notice to the debtor and without a hearing, and for very long periods of time.[6] This is not to say, of course, that all these things may be done with respect to the conditioning of the automatic stay, but this wide ambit of discretion is described only to evidence that the appellate courts ordinarily grant a great latitude to a court empowered to fix times when that power arises out of a statute warranting such fixing "for cause." And, accordingly, the undersigned should not be permitted to interfere with Judge Barker's exercise of that amplitude of discretion.

In filing a successive request for a grant of relief from the automatic stay, however, the movant has necessarily granted the debtor a renewed right to appeal from the former decision as it is now adopted in this order. Consequently, in order to save time and unproductive effort, the court will grant the debtor the same period of delay in the effective date of the "immediate" relief from the stay as it could obtain by filing a motion for extension of time in which to file a notice of appeal. This is a period of 30 days—the 10 days initially allowed to appeal an order (which must transpire before an order becomes effective) plus the 20 additional days by which that period may be extended.[7]

Accordingly, for the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that the movant be, and it is hereby, granted relief from the automatic stay in accordance with Judge Barker's former order, effective January 19, 1985.

---

**4.** "In accordance with the principle that the power to extend the time for filing objections should be liberally construed, we hold that the referee was correct in his conclusion ... that the Court has discretionary authority to extend the discharge date either before or after the expiration of the deadline originally set." *Recile v. Ward,* 496 F.2d 675, 681 (5th Cir.1974).

**5.** See, e.g., *In re Walton,* 51 F.Supp. 857, 859 (W.D.Mo.1943) ("(I)t was the duty of the bankruptcy court, when it was advised, as in this case, that its jurisdiction had been imposed upon, and that an unworthy debtor had been discharged in bankruptcy, to resume jurisdiction and, in doing so, to bring all parties before it for the purpose of ascertaining whether such imposition had been worked by the bankrupts. If the petitioner were able to establish the truth of its averments, then, in justice and equity it would become the duty of the bankruptcy court to vacate the order discharging the bankrupt and afford all of the creditors the right and opportunity to proceed against their unworthy

debtor."); *In re Magouirk,* 693 F.2d 948, 951 (9th Cir.1982) ("The motion for an extension of time to file the complaint was ... procedurally similar to a motion to set aside a default judgment under Fed.R.Civ.P. 55(c) and 60(b) ..."); *In re Couch,* No. L.R.M. 498 (E.D.Ark. Jul. 23, 1982) ("By setting aside its discharge order, the Court gave the creditors, debtor, trustees and itself the opportunity to assess the legal ramifications of the information it has been presented with before it reinstates or rescinds petitioner's discharge.") But see *In re Couch,* 43 B.R. 56, 58 (Bkrtcy.E.D.Ark.1984), holding vacation of the discharge to be "unprecedented."

**6.** "(A) referee may extend the time for filing objections to a bankrupt's discharge without notice." *In re Semel,* 427 F.2d 651, 653 (3d Cir. 1970). And see *Recile v. Ward,* supra note 4. (extension of 2½ years).

**7.** See Rule 8002(c) of the Rules of Bankruptcy Procedure.