In the Matter of PLANTATION MANOR RESTAURANT OF HOUMA, INC., Debtor.

PLANTATION MANOR RESTAURANT OF HOUMA, INC., Plaintiff,

v.

WENHOPE ASSOCIATES, Defendant.

Bankruptcy No. TX 84–48.
Adv. No. AP–85–67.

United States Bankruptcy Court,
W.D. Arkansas,
Texarkana Division.

Feb. 27, 1985.

Charles W. Baker, Rose Law Firm, Little Rock, Ark., for plaintiff.

John C. Calhoun, Jr., Owens, McHaney & Calhoun, Little Rock, Ark., for defendant.

ORDER DENYING APPLICATION FOR PRELIMINARY INJUNCTION

DENNIS J. STEWART, Bankruptcy Judge.

This court formerly entered its judgment on December 21, 1984, granting the defend-

ant relief from the automatic stay with respect to certain motel property. 45 B.R. 229. In the exercise of the relief thus granted, the defendant proceeded to foreclosure of the property and the foreclosure sale was scheduled for February 15, 1985.

In the meantime, the debtor filed this action, seeking to enjoin the foreclosure sale thus scheduled, on the grounds that there were "changed circumstances" in that the debtor now had a purchaser who would promise to pay an amount over the space of 15 years as would completely pay off all existing creditors. Pursuant to that filing, this court earlier conducted an emergency, summary hearing on the debtor's motion for a temporary restraining order to restrain the foreclosure until a hearing could be held on its application for preliminary injunction. It was determined from the evidence then adduced that the foreclosure should be temporarily restrained pending a hearing on the issue of whether a preliminary injunction should issue.

Now, on the date of February 26, 1985, the hearing on the issue of whether the preliminary injunction should issue has been completed. The matter has been taken under advisement in order to ensure full consideration by the court of all relevant factors. Because it is imperative, however, that a ruling be issued immediately, the court is constrained to set out only the most important and material factual findings and conclusions of law.

The hearing of February 26, 1985, was comprised, in the main, of the testimony of Ron Goldberg, the controlling insider of Ron Don, Inc., the corporation which proposes to take over the subject motel under the agreement which now purports to exist between it and the debtor. In the hearing on the motion for a temporary restraining order, it was represented to the court that Ron Don, Inc., had made an offer to purchase the motel for an amount, payable over a term of 15 years, which would result in payment of all creditors of the debtor, both secured and unsecured. In the hearing of February 26, 1985, however, it was testified by Mr. Goldberg that the contem-

plated arrangement was a lease by him of the motel property from the debtor for a period of two years with an option to purchase within that two year period for $1.3 million. The payments under the lease were to be $11,000 per month to the lessor debtor, $8500 of which would go toward retirement of the indebtedness to Wenhope Associates, Inc., and $2500 of which would go toward the retirement of other debts. Accordingly, it is proposed that $8500 per month be paid in cash and $2500 per month either in cash or in "recognized satisfaction of claims against the debtor," a provision which, it is contended, will encourage Ron Don, Inc., to compromise by mutual agreement the claims of many creditors. It was shown to the court, otherwise, that Mr. Goldberg, working through Ron Don, Inc., has extensive experience in acquiring businesses such as the debtor's and rescuing them from precipitous circumstances and turning their losses into profits. The evidence also demonstrates that Ron Don, Inc., is rather thinly capitalized and would not, without some infusion of capital, be likely to undertake any material improvements in the property. And Mr. Goldberg testified that it was his principal intention to "get the property in condition to sell to somebody else" and that he accordingly does not know whether he himself, working through Ron Don, Inc., will operate the motel business indefinitely. If payments continued to be made at the rate which is predicated by the proposed arrangement, they would be slightly higher than the monthly contract rate owed to Wenhope by virtue of the mortgage which it seeks to enforce. Thus, some gradual reduction of arrearages may be accomplished, but there is no plan for any prompt cure of the arrearages which are now owed. The property was purchased by the debtor from Wenhope in 1978 for a purchase price of $1.2 million. A down payment of $69,000 in cash was then made and a note in the sum of $1,131,000 issued bearing interest at the rate of 6% per annum. According to the testimony of Le Roy Roell, secretary of the debtor corporation, the debtor has since paid over $400,000 against the outstanding

indebtedness and quit paying the monthly payments prior to the date of bankruptcy because they were continually being "harassed" by Wenhope concerning improvements which Wenhope desired that they make. After the debtor quit making the monthly payments, its officers arranged for a meeting with officers of Wenhope, hoping to resolve the differences which existed between them. But, according to Mr. Roell's testimony, Wenhope then "seized" the motel property pending the hearing. Later, as has been recounted in orders earlier issued by this court in these chapter 11 reorganization proceedings, after the Honorable Frank P. Barker, Jr., issued his order of September 24, 1984, conditioning the automatic stay so as to grant the debtor an opportunity to obtain financing, the officers of Wenhope virtually destroyed any hope that the debtor had to obtain such financing by hiring the same attorney which had formerly been representing the debtor to register judgments against the debtor's principals, Hebert and Roell, in Louisiana. Since that time, and prior thereto, for nearly the past year and a half, the debtor corporation has been seeking unsuccessfully to sell the motel property. This effort has been hampered, its officers claim, by the actions of Wenhope. But only general descriptions of such actions are contained in the evidence offered in connection with these proceedings, except with respect to the registration of judgments mentioned above.

As to the registration of those judgments, that complaint was made an essential feature of the debtor's previous defense to Wenhope's requesting unqualified relief from the automatic stay from the undersigned after the debtor failed to comply with the conditions imposed on the stay by Judge Barker's order of September 24, 1984. At that time, this court denied the defense, stating that the judgments which were registered after September 24, 1984, were in existence prior to that date; that, therefore, the possibility of their being registered had to have been within the contemplation of the parties; that the order of Judge Barker entered on September 24, 1984, was absolute in its terms and purported to make no exception to the "immediate" relief which was to be granted in the event of any noncompliance with its conditions; that "Judge Barker's order was issued in contemplation of the possibility that the debtor would fail to obtain financing because of an honest disclosure of its financial resources to potential lenders"; and that "all that the actions of the movant, in registering its judgment against Hebert and Roell actually accomplished was the notification of the potential lenders of the true financial status of the principals of the debtor." This court therefore believed itself to be bound by the absolute order of Judge Barker, which was unequivocal in its ruling to the effect that "(u)pon default of performance of any condition hereof requiring payment of funds to Movant, Movant shall be entitled to immediate relief as prayed in its Motion." And "where a judge ... or a judge assigned to a ... Court, while a case is on his calendar, renders a decision and makes a judicial order in such case, and thereafter the case is transferred to another judge of the same court, the latter judge should respect and not overrule such decision and order." *Stevenson v. Four Winds Travel, Inc.*, 462 F.2d 899, 904–905 (5th Cir.1972).

As observed above, pursuant to the above described order of the undersigned, which was entered on December 21, 1984, the defendant proceeded to schedule the foreclosure sale for February 15, 1985. The present action was filed on February 12, 1985, and the court entered its temporary restraining order on February 14, 1985. In so doing, the court noted that it considered, at the earlier stage in this action, the issue of irreparable injury to be the most crucial and that there was apparently an offer in existence which might result in the cure of the provisions of Judge Barker's order of September 24, 1984. It was observed in the order of the court issued on February 14, 1985, that the offer which had been represented to have been made might be improved before the hearing on the issue of the preliminary

injunction and that the evidence then before the court tended to show "the existence of a likely purchaser who would unequivocally promise to pay the amounts necessary to sustain a chapter 11 plan."

Thus, if, in the hearing of February 26, 1985, it had been shown to the court that an arrangement was soon to be effective which would result in the prompt curing of all the monetary noncompliances with Judge Barker's order of September 24, 1984, and which otherwise showed a reasonable likelihood of success in achieving confirmation of a chapter 11 plan, then relief from this court's prior order unconditionally granting relief from the automatic stay might have been justified. As this court noted in its order of February 14, 1985:

> "(T)he action at bar may well be viewed as one for relief from (this court's prior order of December 21, 1984), because its operation and effect would no longer be equitable. Rule 60(b)(5) of the Federal Rules of Civil Procedure pertinently provides for relief from judgment when 'it is no longer equitable that the judgment should have prospective application.' The rule has previously been deemed applicable to 'a . . . lien . . . which continues to keep property out of the chapter 11 estate.' *Matter of E.C. Bishop and Son, Inc.*, 32 B.R. 534, 536 (Bkrtcy.W.D.Mo. 1983)."

But the evidence which is recounted above does not so show. Rather, it would substitute wholly different payment arrangements and deadlines than those which were imposed by Judge Barker on September 24, 1984, with the imperative that they either be timely met or relief from the automatic stay was to be "immediate." If compliance with those conditions were now offered, plus compensation for the delay in payment beyond the deadlines which were fixed by Judge Barker, then equity might well demand that the court set aside its order of December 21, 1984, granting relief from the automatic stay. But the evidence unambiguously shows that there is no intention to cure any arrearages, including the arrearages existing by reason of the non-

compliance with Judge Barker's order of September 24, 1984. Judge Barker obviously considered the payment provisions of paramount importance, directing that they not be modified, but rather be only the subject of "immediate" relief for any noncompliance. Under the evidence which has now been presented, this court continues to believe itself bound by Judge Barker's order of September 24, 1984.

Separately and independently, this court could not find, on the basis of the evidence which is now before it that, even if Judge Barker's order could now be modified, there is any reasonable likelihood that the debtor could successfully gain confirmation of the chapter 11 plan which will be based on the arrangement now evidenced. As previously noted, "(a) party seeking a restraining order (or injunction) must make a persuasive showing of . . . likelihood of prevailing on the merits." *New Motor Vehicle Board v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347, n. 2, 98 S.Ct. 359, 361, n. 2, 54 L.Ed.2d 439 (1977). Permanent injunction could be obtained only upon confirmation of a plan; and, in order to confirm a plan of reorganization under chapter 11, the reorganization court must find, *inter alia,* that:

> "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." Section 1129(a)(11) of the Bankruptcy Code.

On the record of evidence now before the court, however, a court would not be justified in ruling it to be unlikely that liquidation or further reorganization will not be necessary after the two-year lease to Ron Don, Inc., is terminated. That matter is left wholly in the discretion of Mr. Goldberg, who would be granted the opportunity to abandon the project if further losses continue to be experienced in the motel operations. Mr. Goldberg, further, refuses to be pinned down on his intentions with respect to continuing further in the business. In fact, he states that it would be his

present intention to get the property in condition to sell to another person. There is no likelihood in evidence, therefore, that reorganization under the putative plan now put forth by the debtor would not be followed by liquidation or further reorganization.

The court has been given pause in rendering its decision by the tremendous stakes involved and the potential for individual liability on the guarantees made by Mr. Hebert and Mr. Roell. But the unequivocal demands of Judge Barker's order of September 24, 1984, will not permit this action to remain in a holding pattern for the indefinite future. And that is all the debtor now proposes—a two-year holding pattern until further decisions and developments can take place.

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the debtor's application for a preliminary injunction be, and it is hereby, denied.