In the matter of N. Denny CRISP, and Sandra A. Crisp, Debtors.

Bankruptcy No. 82–02162–2–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

Aug. 26, 1986.

---

Dennis J.C. Owens, John H. Trader, Kansas City, Mo., for debtors.

DENNIS J. STEWART, Chief Judge.

AMENDED ORDER DENYING SUPPLEMENTAL APPLICATIONS FOR ATTORNEY'S FEES OF DENNIS J.C. OWENS, ESQUIRE, AND JOHN H. TRADER, ESQUIRE, FILED ON MAY 14, 1986, AND HEARD ON JUNE 9, 1986

Now before the court for resolution, after the completion of a full and fair hearing on the subject on June 9, 1986, in Kansas City, Missouri, is the application of Dennis J.C. Owens, Esquire and John H. Trader, appointed by former bankruptcy judge Joel Pelofsky as the general counsel for the debtor when these title 11 proceedings were originally filed as reorganization proceedings under chapter 11 of the Bankruptcy Code.[1] Mr. Owens was appointed as special counsel to continue the prosecution of two civil actions in which the debtor was plaintiff and Mr. Owens and Mr. Trader had acted as his counsel before the filing of the chapter 11 proceedings.[2] In this capacity, Mr. Owens and Mr. Trader had built up, by the time of the filing of the chapter 11 proceedings, a claim for unpaid attorney's fees in the amount of some $12,000, for which they had, shortly before bankruptcy[3], taken a security interest in real property of the debtor and then promptly after bankruptcy filed a proof of secured claim against the bankruptcy estate. Otherwise, the evidence which was adduced on June 9, 1986, demonstrated that, in respect to one of the civil actions being prosecuted at the inception of these title 11 proceedings, a compromise and settlement of some $95,000 in favor of the bankruptcy estate was achieved; that, from this sum, Mr. Owens and Mr. Trader were paid the sum of $28,500 on account of a 30% contingent fee contract which was honored by the prior bankruptcy judge; that, otherwise, for services performed in connection with these bankruptcy proceedings after their inception, Mr. Owens and Mr. Trader, or both, have received an additional sum of

---

**1.** This court assumes that Judge Pelofsky entered an order appointing applicants as general counsel for the estate (in addition to their appointment as special counsel to prosecute the state court litigation). But this court can find no record of such an appointment. *If no appointment was made, it is an additional ground for denying the requested award of fees.* See 2 Collier on Bankruptcy Para. 327.02, p. 327–6 (15th ed. 1986).

**2.** The current trustee in bankruptcy, in his response to the applications for attorney's fees filed on May 27, 1986, separates these two state court cases into the "Kinsport" litigation and the "Crum and Long" litigation. The trustee states that "with regard to the *Kinsport* litigation, the Court previously entered its order on June 25, 1984, approving a one-third contingent fee arrangement in favor of Dennis Owens. The *Kinsport* matter was settled by the Trustee for the sum of $15,000. The Trustee respectfully suggests to the Court that Mr. Owens should be compensated for his attorneys fees pursuant to the one-third contingent fee arrangement. The Trustee specifically denies Mr. Owens' allegation that the $15,000 settlement was designated as and for attorney's fees." The trustee further states, with respect to the *Crum* and *Long* litigation, "the court previously entered its order on

January 12, 1983 approving a one-third contingent fee agreement in favor of Dennis Owens. The Crum and Long case was settled by the Trustee for the sum of $11,000.01. It if the Trustee's position herein that Dennis Owens is entitled to payment of attorney's fees pursuant to the one-third contingent fee agreement and court order based upon the settlement amount."

**3.** A separate pending adversary action brought by the trustee for recovery of the obligation as a preferential transfer makes it clear that the transfer was within the 90 days next preceding bankrupty. The evidence in this case shows that it was but a very few days before bankruptcy that the security interest was taken. In denying the requested awards of attorneys' fees in the matter at bar, the court does not imply that the transfer of a security interest should be set aside as preferential. For the purposes of the matters now before the court on the applications for attorney's fees, it is sufficient to say that counsel, in taking the security interest, apparently regarded themselves as having rendered services not in contemplation of or in connection with the bankruptcy proceedings, which should simply be disclosed as a retainer fee according to the process described in Rules 2016 and 2017 of the Rules of Bankruptcy Procedure.

$15,200 [4]; that, with respect to a second civil action which was pending at the commencement of these title 11 proceedings, the attorney for the bankruptcy trustee brought about a compromise and settlement of it for the sum of $15,000 [5]; that with respect to this action, Mr. Owens also had a 30% contingency fee contract, but he contends that this will in no way approach paying for his services rendered in connection with that action, some 177 hours, he contends, at an average billing rate of $85 per hour [6]; that nearly all the 177 hours for which he seeks to make such charges were consumed in reading the files and acquainting himself with the case [7]; that, further, he has rendered services in connection with the other civil action which was settled for the sum of $95,000 which were not fully compensated, some 700 hours, he contends, which, at his average billing rate, should have produced a fee many times the $28,500 contingent fee which was awarded [8]; and that Mr. Trader is also due certain sums of attorney's fees for duties which he performed postpetition in his capacity as counsel for the debtor. [9]

■■■ Out of the melange of facts demonstrated by the documentary and testimonial evidence before the court, one looms out as being of paramount significance. That is the fact that Mr. Owens and Mr. Trader were prepetition creditors of the debtor. This is now clearly evidenced by the existence of a filed proof of claim with the bankruptcy court. Accordingly, under the governing law, neither counsel can command awards of attorney's fees for services alleged to have been rendered for the chapter 11 estate generally. This is so because counsel who are themselves prepetition creditors are disqualified by reason of a conflict of interest from acting as counsel for a debtor-in-possession. See, e.g., *In re Roberts*, 46 B.R. 815, 849 (Bkrtcy.D.Utah 1985), to the following effect:

> "If, however, the law firm is owed by a petitioning client, on the date of filing, a pre-petition debt for legal fees for services not rendered in contemplation of or in connection with the bankruptcy case, then the law firm would be a creditor of the debtor to the extent of those fees and costs and, therefore, would run afoul of the 'no adverse interest' and 'disinterestedness' requirements of Section 327(a). In such a circumstance, the conflict of interest would not be eliminated if the law firm obtained from the client a pre-petition payment of these fees and costs because such a payment would likely constitute a preference that may be avoided for the benefit of other creditors, thus involving the law firm in a conflict of interest as the holder of an interest adverse to the estate in violation of Section 327(a)."

■■■ This irrefutable logic has been followed in a medley of other decisions. [10] It

4. The evidence to this effect in the hearing of this matter was not contradicted.

5. The trustee also states that it was he who achieved the settlement of the other state court action. See note 2, *supra*.

6. Thus, a payment of at least $15,045, in addition to the nearly $44,000 already received is sought by Mr. Owens and Mr. Trader.

7. This admission was made testimonially by Mr. Owens in the hearing of this matter in response to a question posed by the court.

8. Accordingly, the court is requested to go beyond the contingent fee contract in making the award which is currently sought.

9. In the notice of the hearing on attorney's fees directed by applicant counsel, it was stated that they apply for an additional sum of "approximately $10,000" for their work together on the two state court cases. But, because they seek to go beyond the contingent fee contracts, these must be considered as general applications for awards from the estate. In respect of one of the state court actions, the contingent fee has already been paid, see note 8, *supra*, and, with respect to the other state action, the contingent fee contract was dependent upon actual trial, rather than settlement by another counsel.

10. Some cases focus on the exception to the rule, that when the representation will be narrow and a function of the former capacity, the potential conflict does not outweigh the benefit which experience can bring to the estate. See e.g., *In re Heatron, Inc.*, 5 B.R. 703, 2 C.B.C.2d 1054 (Bkrtcy.W.D.Mo.1980). But that rule is not applicable in these matters, in which coun-

serves the necessary prophylactic purpose of preserving the interests of chapter 11 debtors and creditors from those who would have a motive for self-dealing, if permitted to serve as a fiduciary for all creditors and debtors when in fact their self-interest would dictate otherwise. And it is axiomatic that those who have conflicts of interest which disqualify them from serving the estate cannot be awarded attorney's fees for such alleged service. "When compensation is sought for past legal services not rendered in contemplation of or in connection with a case under the Code, the claim of the attorney is in no better position than that of any other creditor." 2 Collier on Bankruptcy Para. 329.03, p. 329–13 (15th ed. 1985). Therefore, insofar as the applicants seek awards from the estate for generally aiding in administration during the course of the chapter 11 proceedings [11], their applications can only be denied.

The court is mindful that the rule can be and has been relaxed when a counsel who previously represented the debtor is permitted to serve as counsel, subsequent to commencement of the chapter 11 proceedings, for a special and limited purpose, when that special purpose is without the ambit of the potential conflict of interest. "Thus section 327(a) makes provision, when it is in the best interest of the estate, for the trustee to employ, for a 'specified purpose,' other than to represent the trustee in 'conducting the case,' an attorney who has represented the debtor. Such an attorney need not be 'disinterested,' as is otherwise required by section 327(a), provided that the attorney represents or holds no interest adverse to the debtor or to the estate in the matter upon which the attorney is engaged." 2 Collier on Bankruptcy Para 327.03, p. 327–28 (15th ed. 1985). Thus, according to Mr. Owens' implied contentions, he has acted as special counsel for a limited purpose consistent with this self-interest in aiding in the prosecution of the two civil actions in other courts and he should be compensated for his role. The trouble with this contention is that Mr. Owens' fee for his services as special counsel were to be regulated by his contingent fee contracts with the debtors. Judge Pelofsky so ruled [12] and, according to governing legal principles which are further amplified below, the undersigned is without any warrant in law or fact to change Judge Pelofsky's decision. And Mr. Owens has, according to his own testimony before the court on June 9, 1986, already received all he is entitled to receive under the contingent fee agreements. He has received 30% of the $95,000 settlement in the first of the civil actions. As to the other civil action—the one settled by trustee's counsel for the sume of $15,000—the contingent fee contract provides a fee for Mr. Owens only in the event that he had been required to go to trial as counsel for the plaintiff.[13]

Otherwise, Mr. Owens must seek any excess in fees from the estate and on account of his having generally rendered services "in aid of administration." See 2 Collier on Bankruptcy Para. 330.04, p. 330–18 (15th ed. 1985), to the following effect:

"Under the Act, in order for the debtor's attorney to be entitled to an award of compensation from the estate, the services were required to be rendered 'in aid of administration of the estate.' This requisite constituted at least a clarification of the benefit principle as based on *Randolph v. Scruggs*, 190 U.S. 533 [23 S.Ct. 710, 47 L.Ed. 1165] (1903), inasmuch as it did not presuppose a benefit to the estate as such, but to its administration."

But the applicants are barred from collecting such compensation principally by reason of the doctrine of conflict of interest adverted to above. And, even if they were not,—as they may not be with respect to services alleged to have been performed—it could not now be held that they have

---

sel must be deemed to request general awards from the estate. See notes 8 and 9, *supra*.

**11.** See note 10, *supra*.

**12.** The contingent fee contract was previously approved by Judge Pelofsky.

**13.** Cf. note 9, *supra*.

demonstrated that the services for which they now seek compensation were "in aid of administration" of the estate. According to Mr. Owens' own testimonial admission, the uncompensated services which relate to both civil actions—the one settled for $95,000 and the one settled for $15,000 —for which he now seeks compensation were nearly all hours spent aquainting himself with the case, literally hundreds upon hundreds [14] of hours allegedly reading the files. But, in some part, the fees must be measured by the benefit conferred on the bankruptcy estate, and, to the extent that it can be shown that his efforts produced such a benefit, his efforts have been amply compensated. He received $28,500, as observed above, as his contingent fee on the first case. And it was the attorney for the trustee on the second case who—in the face of an examiner's report that the case had little merit, a report made swiftly and comparatively effortlessly even as Mr. Owens, according to his own testimony, continued to plod through the files to discover its merit—took the bull by the horns and settled the case for what appears to have been its maximum value. It is only too obvious that Mr. Owens' services in this regard could not have aided the administration of the estate and that he should not be compensated for them.

The applicants, after all, have already received approximately $45,000 in attorney's fees from the bankruptcy estate. The award to this extent previously made by Judge Pelofsky, without the augmentation which is now requested, ranks among the highest in the history of the Western District of Missouri.[15] For counsel now to attempt to take even more from the estate on such a showing as is described above seems to be based on an assumption that estates in bankruptcy are essentially collected for the benefit of those who act as attorneys for the debtor and the trustee. But the opposite is true. It is to be remem-

bered that "the purpose of the Bankruptcy Act was to benefit creditors and debtors, not trustees." *In re Kokoszka*, 479 F.2d 990, 996 (2d Cir.1973), affirmed, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). The Bankruptcy Code is not a "full employment bill for attorneys" anymore than is the Criminal Justice Act. *Mee v. Becker*, 456 F.Supp. 224, 227 (W.D.Mo.1978). The important and indispensable purposes of our national bankruptcy laws figure to be defeated if we permit estate administration to fall prey to such a fundamental and cataclysmic misapprehension of the law.

From what has been said, it might well follow that the postpetition fees received by the applicants according to prior orders should wholly or partly be returned to the estate. But no evidence has been adduced, nor contentions advanced, to the effect that Judge Pelofsky's prior orders were erroneous. In such a context, the undersigned must assume that those orders were based upon underlying facts which ensured that the services compensated were in pursuance of limited purposes and "in aid of administration" of the estate in consonance with the foregoing principles. The canons of judicial courtesy and the rule favoring stability of judgments require the court to permit the prior orders to stand. See *Matter of Plantation Manor of Houma, Inc.*, 45 B.R. 229, 231 (Bkrtcy.W.D.Ark.1984), to the following effect:

> "Under the majority version of the law; under such circumstances, the undersigned must regard himself as bound by the absolute terms of the order entered by Judge Barker, which necessarily override any potential excuse for failure of condition insofar as those terms purport to require immediate and automatic relief from the automatic stay for failure of any such condition. The rule in most of the national courts that have passed on the question is that where a judge ... or a judge assigned to a ... Court, while a

---

**14.** Nearly two hundred, at least, according to the evidence.

**15.** The award constitutes nearly half of the assets brought into the estate as a result of the settlement of the two actions. The court has searched past opinions in vain to find support for awarding such a high percentage of the benefit produced for the estate.

case is on his calendar, renders a decision and makes a judicial order in such case, and thereafter the case is transferred to another judge of the same court, the latter judge should respect and not overrule such decision and order.' *Stevenson v. Four Winds Travel, Inc.*, 462 F.2d 899, 904–05 (5th Cir.1972). This clear rule finds its foundation in reason and common sense. A party aggrieved by one judge's ruling has a proper remedy by means of appeal to a properly-constituted appellate tribunal; the review and amendment or reversal of one coordinate judge by another can only stultify the law and cheapen the judicial process, encouraging litigants, at least, to indulge in a form of forum shopping which would exploit and dramatize the philosophical differences among co-equal judges as a means of achieving their disqualification in order to use such coordinate review as a substitute for appeal. The crippling potential for justice is obvious. 'It is a judge's duty to decide all cases within his jurisdiction and "he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." ' *Campbell v. Supreme Court of Florida*, 428 F.2d 449, 451 (5th Cir.1970), quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). So it may be concluded that there is a firm basis for this version of the rule which prohibits a transferee judge from reviewing and overruling the decision of another coordinate judge, regardless of the merit of the former decision. This court, for the reason and, further, on the basis of courtesy to a coordinate judge and respect for his decisions, must elect to follow this rule and leave Judge Barker's ruling undisturbed."

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the application of Dennis J.C. Owens, Esquire, and John H. Trader, Esquire, for supplemental attorney's fees; which was filed on May 14, 1986, and heard on June 9, 1986, be, and it is hereby, denied.