In the Matter of N. Denney CRISP and Sandra A. Crisp, Debtors.

Bankruptcy No. 82–02162–2–3–11.

United States Bankruptcy Court,
W.D. Missouri, W.D.

Aug. 5, 1988.

Final Order of Distribution of Funds
of Estate Aug. 31, 1988

John H. Trader, Millin, Trader & Jackson, Dennis J.C. Owens, Kansas City, Mo., for debtors.

Robert A. Pummill, Jerald Myer, Barker, Rubin & Sonnich, Kansas City, Mo., for trustee.

Charles Rubin, Barker, Rubin & Sonnich, Kansas City, Mo., trustee.

Alan Jacobson, Sp. Asst. U.S. Atty., Kansas City, Mo., for I.R.S.

DENNIS J. STEWART, Chief Judge.

Formerly, on April 18, 1988, this court issued its order directing the debtors and creditors to show cause in writing why the within bankruptcy estate should not be distributed according to the following principles:

> "(T)he following ... would be classified as postconversion administrative claims under the provisions of section 726(b) of the Bankruptcy Code which would have a superpriority in the distribution of the estate monies:

State and city tax claims .. $15,500.00
Attorney's fees, attorney
for trustee ................. 2,000.00
N. Denny Crisp, compen-
sation .................... 45,593.12
Judith Taylor, compensa-
tion ...................... 23,276.87
Examiner fees (Dennis
Dow) ..................... $2,931.08
Mo. Div. of Finance 1983
and 1984 property taxes .... 1,983.89
Total ..................... 91,284.96

> "The total of first priority administrative claims—which, under the law, must be paid fully before lower priority claims may lawfully be paid—thus appears to exceed the total of monies on hand. It would therefore appear that the above claims should be paid the percentage that the total of monies on hand is of the total claims—65.7%—and that no other claims can be paid."

*Claim of the Internal Revenue Service*

In response to the court's above quoted order of April 18, 1988, the Internal Revenue Service filed a claim in the total sum of $59,987.72, to which the trustee has levelled several objections. The trustee objects that "the last day to file claims was January 16, 1986." The trustee's position is supported by the letter of Bankruptcy Rule 3003(c) to the effect that "a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors ..." The possibly applicable exception thereto is contained in subparagraph (1), as follows:

> "On motion of the United States, a state, or subdivision thereof before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the United States, a state, or subdivision thereof."

It does not appear from the files and records in this case that the United States filed any motion for extension of time, nor have they currently filed any such motion or made any offer to show good cause within the meaning of the foregoing rule. The court therefore proposes not to permit the late filing of any claim by the Internal Revenue Service.

*Response of John C. Trader*

The response of John C. Trader, attorney for the debtor, includes (1) a claim on behalf of the Internal Revenue Service in the total sum of $43,274.02 and (2) an application for postconversion attorney's fees in

the total sum of $39,843.00. The claim filed on behalf of the Internal Revenue Service suffers from the same infirmity as is mentioned above and the court will not, accordingly, treat further of it in this order.

■ With respect to the application for attorney's fees, the law is clearly to the effect that debtors' attorneys may be compensated from a bankruptcy estate only for such legal services as are rendered "in aid of administration of the estate." 2 Collier on Bankruptcy para. 330.04, p. 330–22 (15th ed. 1988). "The weight of authority under the Act was in favor of limiting compensability to services rendered in assisting debtors in performing their legal duties rather than exercising their legal privileges ... 'The allowance ... ordinarily covers only work done in promoting the administration of the estate and in assisting the bankrupt to perform his duties, such as drafting and filing the petition, drafting and filing the schedules, attendance at the first meeting, and other services in furtherance of the winding up of the proceedings.' The Code makes no change in this regard." *Id.*, p. 330–22. In accordance with this general principle, it is held by an unbroken chain of authority that "legal services designed to benefit the bankrupt personally may not be compensable out of the estate." *In re Orbit Liquor Store*, 439 F.2d 1351, 1354 (5th Cir.1971). More specifically, "attorneys' fees related to defending against objections to the discharge are not payable out of the estate." *Matter of Jones*, 665 F.2d 60 (5th Cir.1982); *Lewis v. Fitzgerald*, 295 F.2d 877, 879 (10th Cir.1961); *In re Rothman*, 85 F.2d 51 (2d Cir.1936). In the application at bar, applicant counsel seeks compensation in part on the basis of defending an objection to discharge. Accordingly, his services in this regard, which are summarized in the marginal note,[1] cannot be compensated from the bankruptcy estate.

■ Another melange of services for which compensation is sought are those services which are alleged to have been rendered in aiding the trustee in his attempts to gain possession of certain computer records of the debtors' accounts receivable which the trustee needed in order to recover the value thereof for the estate. See *Rubin v. Crisp*, Adversary Action No. 85–0688–3 (Bkrtcy.W.D.Mo. Oct. 6, 1986), which this court was compelled to dismiss because the trustee had been unable to obtain the computer records which were necessary to sustain his case.[2] Thus, it

---

1. The services purporting to have been rendered on the following dates are characterized in applicant's detailed statement as having been rendered in defending the objection to discharge:

| | | |
|---|---|---|
| 1–10–86 | 12–3–86 | 1–7–87 |
| 1–10–86 | 12–9–86 | 1–8–87 |
| 4–16–86 | 12–10–86 | 1–8–87 |
| 10–9–86 | 12–11–86 | 1–12–87 |
| 10–9–86 | 12–16–86 | entries on page 8 of the |
| 10–28–86 | 12–31–86 | detailed statement dating |
| 10–29–86 | 12–31–86 | from 1–13–86 to 3–19–87 |
| 11–17–86 | 1–2–87 | 11–24–87 |
| 11–18–86 | 1–2–87 | 11–25–87 |
| 11–19–86 | 1–3–87 | 11–26–87 |
| 11–20–86 | 1–6–87 | 11–27–87 |
| 12–1–86 | 1–6–87 | entries on page 10 of the |
| 12–1–86 | | detailed statement dating |
| | | from 5–29–87 through |
| | | 11–16–87 |
| | | 11–24–87 |
| | | 11–25–87 |
| | | 11–26–87 |
| | | 11–27–87 |

2. In that action, on October 6, 1986, this court issued its "final judgment of dismissal," observing in part as follows: "(T)he defendants ... moved for dismissal on the basis of *In re Fitz-Simmons*, 725 F.2d 1208, 1211 (9th Cir.1984) ('FitzSimmons is—entitled to monies generated by his law practice ... to the extent that they are attributable to personal services that he himself performs.').... The trustee complains that he does not have sufficient books and records from which to make an informed judgment as to whether all the accounts receivable in question arose from services performed by the debtors.... If adequate books and records do not exist from which the trustee can ascertain which accounts, if any, are not attributable to personal services, then it is appropriate for him to request denial of discharge of the debtors, either for failure to keep and preserve adequate records or failure to produce them in response to a lawful order of court ..." Later, in *Rubin v. Crisp*, Adversary Action No. 86–0434–2–3 (Bkrtcy.W.D.Mo. Mar. 11, 1987), this court denied the debtors' discharges in bankruptcy. The ground for such denial was that the debtors had failed and refused to produce the information

cannot be said that any such efforts as were rendered in this regard were "in aid of administration of the estate."[3] Accordingly, it appears that the applicant's claim for compensation in respect of these services, which are detailed in the marginal note,[4] cannot be allowed.

■ The same principles apply to those hours of services which counsel allegedly rendered in defending the debtors' interests against certain creditors.[5] These services were rendered exclusively for the benefit of the debtors and, under a unanimity of current authority, cannot therefore be compensated from the estate.[6] Applicant counsel, hoping for a contrary result, relied upon an old district court decision which allowed debtor's counsel compensation from the bankruptcy estate for services which were rendered exclusively for the benefit of the debtor,[7] but that decision

---

requested by the trustee with respect to the accounts receivable. In the findings of fact and conclusions of law underlying that judgment, the court, in part, observed as follows: "Robert A. Pummill, the attorney for the trustee in bankruptcy, shortly after the meeting of creditors, repeated to John C. Trader, counsel for the debtors, a demand which Mr. Rubin had made in the course of the meeting of creditors that amended schedules be filed containing a listing of all accounts receivable. Mr. Trader responded by providing certain statistical material respecting accounts receivable, but declined to submit a list of the names of account debtors and their addresses, claiming privileges for that information, ranging from a claim that the subject accounts receivable were 'exempt' under the rule of *In re Fitzsimmons*, 725 F.2d 1208 (9th Cir.1984), to a claim of confidentiality of patient names. The evidence does not show how, precisely, these claims of 'privilege' were 'worked out' and settled between the parties, but it was Dr. Crisp's clear testimony that his concerns respecting these privileges dissipated and that he became willing to turn over to the trustee any and all documents which he had relating to any and all of his accounts receivable. Nevertheless, according to the testimony of Mr. Pummill, when he again requested of Mr. Trader that all relevant documentary materials be produced, Mr. Trader represented to him that all the information available had been on the computer discs (which were missing) and that there was no other material on accounts receivable in existence. In the meantime, however, the trustee and his counsel had obtained from the secured creditor which had repossessed the computer all the discs which had been repossessed. None of these contained any information concerning accounts receivable. And, on or about December 2, 1985, it was Mr. Trader's statement to Mr. Pummill that all information had been 'lost in the computer.' ... It was Dr. Crisp's testimony that—contrary to representations earlier made by Mr. Trader, as recounted above—back-up records existed, and continue to exist, but he never received any specific request from (representatives of the estate) to do anything with them ..."

3. This standard does "not presuppose a benefit to the estate as such, but to its administration." 2 Collier on Bankruptcy para. 330.04, p. 330–22

(15th ed. 1988). But it is clear that counsel's activities in this regard were of no benefit to the administration of the estate. See note 2, *supra.*

4. The following dates are those on which, according to the detailed statement, applicant counsel purports to have rendered services in the form of supplying information to the trustee or in resisting the turnover complaint:

| Information requested by trustee | turnover complaint |
|---|---|
| 11–15–85 | 1–2–86 |
| 11–17–85 | 1–3–86 |
| 11–28–85 | 1–6–86 |
| 12–02–85 | 8–26–86 |
| 12–06–85 | 8–27–86 |
| 12–10–85 | 9–15–86 |
| 12–11–85 | 9–16–86 |
| 12–16–85 | 9–18–86 |
| 12–17–85 | 9–19–86 |
| 12–18–85 | |
| 12–20–85 | |
| 12–23–85 | |
| 12–26–85 | |

5. According to the detailed statement submitted by applicant counsel, he rendered services on the following dates in defense of a preference action brought against the debtor's relative Verba Crisp: 2–19–86, 3–24–86. He rendered services on the following dates with respect to a matter between Prudential Insurance Co. and the debtors: 7–6–86, 7–8–86, 7–17–86, 8–2–86, 8–4–86. On the following dates he rendered services in respect to the debtors' potential controversy with the Internal Revenue Service: 9/18/86, 9–24–86, 11–4–86, 11–14–86, 4–26–88, 4–27–88, and 5–2–88. On February 3, 1986, he rendered a service with respect to the "Missouri Division of Revenue". On the following dates, he rendered services with respect to an "O'Brien" matter: 9–8–86, 9–9–86 and 9–10–86

6. See authorities cited at page 887 of the text of this memorandum, *supra.*

7. See *In re Malkiel,* 29 F.2d 790 (D.Mass.), to the effect that compensation for procuring the discharge may be allowed the bankrupt's attorney if the referee is satisfied that the bankrupt has turned over to the trustee all his assets and has in all other respects fully complied with the Bankruptcy Act.

was later rejected by a federal appellate court decision to the contrary,[8] thus establishing a line of authority which has continued to be unbroken up to the present time.

■ Nor do the other miscellaneous services described in applicant counsel's detailed statement constitute a satisfactory basis for any award of fees, either because they are not sufficiently described so as to warrant the court in making them a basis for an award of fees [9] or because they are impermissibly lumped with descriptions of other services so that the court is wholly unable to discern what length of time is spent in which activities.[10]

A small minority of the services for which compensation is sought appear to be compensable as activities "in aid of administration of the estate." [11] But the trustee has opposed granting any award for these

services on the ground that the application is untimely and insufficient.[12]

In the absence, therefore, of a more meritorious showing by applicant counsel, the court proposes to deny the existing application for an award of attorney's fees.

### The response of Dennis J.C. Owens

■ In his response to the show cause order of April 18, 1988, Dennis J.C. Owens objects on several grounds. He contends that the show cause order is in contravention of the order of the district court which held, in case no. 87–0257–CV–W–1, that he was entitled to certain fees as a result of his legal work accomplished during the course of the chapter 11 case. But the order of April 18, 1988, purports to work no change in the order of the district court;

---

**8.** See *In re Rothman*, 85 F.2d 51, 53 (2d Cir. 1936), which explicitly rejects the *Malkiel* decision, *supra* note 7, and holds that: "Compensable services may also include those which are reasonably necessary to enable the bankrupt to perform his duties under the act, but we do not think services rendered for the sole benefit of the bankrupt are within the statutory language."

**9.** According to the court's review of the detailed statement, the following entries thereon are too vague and indefinite to warrant and justify an award of fees based on them:

| | | | |
|---|---|---|---|
| 9–10–85 | 3–13–86 | 11–4–86 | 4–27–87 |
| 9–10–85 | 4–30–86 | 11–10–86 | 5–6–87 |
| 9–11–85 | 6–13–86 | 11–13–86 | 5–7–87 |
| 9–11–85 | 6–23–86 | 11–13–86 | 10–19–85 |
| 9–30–85 | 6–26–86 | 11–20–86 | 11–10–85 |
| 10–7–85 | 7–9–86 | 11–21–86 | |
| 10–8–85 | 7–11–86 | 11–24–86 | |
| 10–9–85 | 7–28–86 | 11–25–86 | |
| 10–10–85 | 10–3–86 | 12–1–86 | |
| 10–18–85 | 10–13–86 | 12–2–86 | |
| 10–29–85 | 10–14–86 | 12–4–86 | |
| 10–30–85 | 10–14–86 | 4–2–87 | |
| 11–14–85 | 10–15–86 | 4–8–87 | |
| 12–3–85 | 10–20–86 | 4–10–87 | |
| 1–13–86 | 10–21–86 | 4–14–87 | |
| 1–14–86 | 10–22–86 | 4–17–87 | |
| 1–14–86 | 10–23–86 | 4–20–87 | |
| 2–25–86 | 5–3–88 | 4–27–87 | |

**10.** "Although some of the items in the petition listed the name of an interested party in the proceedings or the general task, there was no indication of the *specific* nature of each service performed and its relation to the bankruptcy proceeding. In addition, several entries 'lumped' together different services in one time frame." *In re Beverly Manufacturing Corp.*, 841 F.2d 365, 370 (11th Cir.1988) (Emphasis in original.) According to the court's review of the applicant's detailed statement, many of the entries are impermissibly lumped together and do not state the specific service performed.

**11.** Applicant counsel lists several services, such as attending meetings of creditors and revising schedules and aiding in a reaffirmation, which may come within the definition of "in aid of administration of the estate." Many of these appear to be impermissibly lumped. See note 10, *supra*. But the following are the dates of the entries: 8–30–85, 9–4–85, 9–5–85, 9–6–85, 9–7–88, 10–30–85, 3–26–86, 3–29–86, 5–6–86, 5–27–86, 6–6–86, 6–18–86. Counsel also seeks compensation for responding to the court's show cause order of April 14, 1988. These services were purported to be rendered on 5–4–88, 5–8–88 and 5–7–88.

**12.** *Inter alia*, the trustee states in his opposition to the application: "The distribution could have been made as the Court ordered had Debtors not responded with claims and applications for which they now seek compensation. There is clearly no benefit to the estate by such actions. The basis for awarding attorney's fees to debtor's counsel is to encourage work that benefits the estate. But for the actions of the Debtors in failing to turn over assets, books and records, delaying the sale of their house, and appealing the bulk of the Orders of this Court, this estate would have been fully administered and closed by this date. The Debtors now seek compensation for the attorney's fees incurred for such nonbeneficial action. In no event can this Court allow compensation to be paid under such frivolous circumstances." Trustee's "objection to application by attorney for debtors for compensation" filed May 24, 1988.

rather, this court recognized that the fees had been allowed, but determined that the priority of payments required by the law was such that they could not be paid. This is so because attorney's fees earned during a chapter 11 proceeding which is later converted to a chapter 7 proceeding are subordinate to the superpriority granted by section 726(b) of the Bankruptcy Code to expenses of administration which occur after the date of conversion. "Code section 726(b) expressly limits the superpriority status to those administrative expenses incurred solely under the Chapter 7 case after its conversion. Hence, the applicants are compelled to look beyond this estate for the source of any compensation with respect to their legal services performed during the Chapter 11 period." *In re Codesco, Inc.,* 18 B.R. 225, 228 (Bkrtcy.S.D.N.Y. 1982). "Whatever the nomenclature, superceding chapter 7 administrative expenses are entitled to be paid in full before priorities of the next rank—administrative expenses incurred in the superceded chapter 11 case—are paid in full or part ... If there are insufficient funds in the estate to satisfy allowed section 726(b) claims in full, the funds on hand will be shared pro rata by each section 726(b) claimant." *In re Energy Co-op., Inc.,* 55 B.R. 957, 968 (Bkrtcy.E.D.Ill.1985). The court, in attempting to apply the proper order of distribution of the estate, does not, therefore, violate Judge Whipple's order, but rather honors it. The court does "not re-examine the amount of the.... (compensation) as previously determined; (the) order accepted this amount but directed payment of a pro rata dividend thereon, as upon other expenses of administration, because the estate was insufficient to pay all in full." *In re India Wharf Brewery,* 96 F.2d 710, 712 (2d Cir.1938). This contention must therefore be denied.

■ Mr. Owens also objected to the order of April 18, 1988, insofar as it stated that, in order for a subordination agreement to be valid—such as the subordination agreement which Mr. Owens purports to have with N. Denny Crisp and Judith Taylor to subordinate their respective claims to his claim for attorneys' fees—it must be supported by consideration. Thus, the court stated as follows in the order of April 18, 1988:

"Counsel for debtors, whose attorney's fees appear to have been earned prior to the date of conversion, have requested an award of fees from the monies on hand. They demand that such an award be made immediately, and they have submitted to the court certain 'waivers' of priority purporting to be signed by N. Denny Crisp and Judith Taylor. 'A subordination agreement is enforceable in a bankruptcy case to the same extent that such agreement is enforceable under applicable nonbankruptcy law.' 8A C.J.S. *Bankruptcy* section 266, p. 247 (West 1988). Accordingly, such an agreement must be supported by consideration and it cannot be honored in the absence of such a showing. The record supports the lower court's finding that Arlon received nothing in return for signing a subordination agreement ... (The creditors are therefore) prevent(ed) ... from taking advantage of the agreement.' *In re Sepco, Inc.,* 750 F.2d 51, 53 (8th Cir. 1984)."

In responding to this statement, Mr. Owens stated that "the court merely assumes that no consideration exists without holding any type of evidentiary hearing. This assumption cannot be made because there is no requirement that a waiver or subordination agreement state the consideration given on its face and because there are simply no facts to support an invalidation of waivers." The court accordingly held its hearing on the issue of consideration on June 30, 1988, at which time Mr. Owens testified to the general effect that the services which he had rendered during the course of this case and prior thereto constituted consideration for the subordination agreement. But the "general rule (is) that past or moral consideration is not sufficient to support a promise." *Garrett v. American Family Mutual Ins. Co.,* 520 S.W.2d 102, 111, n. 2 (Mo.App.1975). On the basis of such testimony, therefore, the subordination agreement cannot be sustained.

■ Lastly, the objector Dennis J.C. Owens asserts, on the strength of *In re A. Tarricone, Inc.*, 76 B.R. 53, 55 (Bkrtcy. S.D.N.Y.1987), that he is entitled to an attorney's lien for the full contractual amount of the contingency fee which is due him under the order of the district court. In the *Tarricone* case, *supra,* applicant counsel had an attorney's lien based upon a suit which commenced prior to inception of the chapter 11 proceedings and which enured to the benefit of the estate by virtue of a judgment thereafter. It was held, under a state attorney's lien statute materially the same as that of Missouri, that the attorney's lien survived the date of bankruptcy as a security interest superior to that of the bankruptcy estate. In that case, it was said:

"An attorney's charging lien is recognized under common law equitable principles as an attorney's right to have the fees and costs due the attorney for services in a suit secured out of the judgment or recovery in that suit.... The fact that bankruptcy may have intervened between the time when the attorney commenced the action and when the assets were received in satisfaction of the cause of action is not significant because the charging lien relates back to the initiation of the action ... The attorney need not file or record a charging lien in order to perfect it; the lien takes effect from the time the services were commenced, and a trustee in a subsequent bankruptcy case involving the client takes the property of the estate subject to such lien."

There is little dissent from the principle that attorneys have a lien on the proceeds of a judgment or settlement fund or other recovery which relates back to the time of the commencement of the suit and which ordinarily prevails over an intervening bankruptcy estate. See section 484.130 RSMo. It is neither stated nor shown, however, that the notice was given to the defendants in the suit or suits according to the requirements of section 484.140 RSMo, which pertinently provides as follows:

"In all suits in equity and in all actions or proposed actions at law, whether arising ex contractu or ex delicto, it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, or at any stage after the institution of suit or action, or before the institution of suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate *from the date of service of said notice as a lien upon the claim or cause of action....*" (Emphasis added.)

There is no statement or showing thus far that the notice above referred to has been served in accordance with the foregoing statute at a date prior to the date of bankruptcy. So, at this juncture, the contention that there is an attorney's lien on proceeds of a suit or suits on hand with the trustee must be rejected.

■ Separately and independently, the compromise and settlement of the suits in question was effected by the trustee in bankruptcy and his attorneys. See *Matter of Crisp*, 64 B.R. 351, 355 (Bkrtcy.W.D. Mo.1986). Applicant counsel, in fact, opposed the approval of the settlement which was effected and which brought the monies into the estate. But the settlement was nevertheless approved. When an attorney abandons the representation, it has been held that he forfeits the lien. See *Lucky–Goldstar v. International Mfg. Sales Co.*, 636 F.Supp. 1059, 1061, n. 3 (N.D.Ill.1986). Even if there has not been an unwarranted abandonment, the recovery of the attorneys for fees must be limited to their reasonable value in quantum meruit. *Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W. 2d 53, 59, 60 (Mo. en banc 1982) ("The better rule, undoubtedly, would be to use the contract price as an upper limit or ceiling on the amount the discharged attor-

ney could recover ... the better rule is that because a client has the unqualified right to discharge his attorney, fees in such cases should be limited to the value of the services rendered or the contract price, whichever is less ... the quantum meruit (reasonable fee) approach ...") But, it has been previously found that, in quantum meruit, the services rendered have no reasonable value. *Matter of Crisp*, 64 B.R. 351 (Bkrtcy.W.D.Mo.1986). The decision in that case was reversed only on another point—that the contingent fee contract did not require the parties to proceed to trial as a prerequisite to recovery of a fee thereunder. See *Matter of Crisp*, Nos. 87–0257–CV–W–1 and 87–0462–CV–W–1 (W.D.Mo. Mar. 3, 1988). According to the above authorities, however, the attorney's lien cannot attach to a fee awarded under the contingent fee contract, but rather only under quantum meruit. Accordingly, it may be the case that, for this additional, separate and independent reason, the contention relying on a purported attorney's lien must be rejected.[13]

For the foregoing reasons, this court still proposes to distribute the estate in accordance with the calculations contained on page 886 of this memorandum. Accordingly, it is hereby

ORDERED that the debtors and creditors, or any of them, show cause in writing within 20 days of the date of filing of this order why distribution of the within estate should not be made in accordance with the principles herein applied and the considerations raised in the responses of the above creditors.

## FINAL ORDER OF DISTRIBUTION OF FUNDS OF ESTATE

Formerly, on April 18, 1988, this court issued its order directing the debtors and creditors to show cause in writing why the within bankruptcy estate should not be distributed according to the following principles:

"(T)he following ... would be classified as post-conversion administrative claims under the provisions of section 726(b) of the Bankruptcy Code which would have a superpriority in the distribution of the estate monies:

| | |
|---|---:|
| State and city tax claims | $15,500.00 |
| Attorney's fees for trustee | 2,000.00 |
| N. Denny Crisp, compensation | 45,593.12 |
| Judith Taylor, compensation | 23,276.87 |
| Examiner fees (Dennis Dow) | 2,931.08 |
| Missouri Division of Finance, 1983 and 1984 property taxes | 1,983.89 |
| Total | 91,284.96 |

"The total of first priority administrative claims—which, under the law, must be paid fully before lower priority claims may lawfully be paid—thus appears to exceed the total of monies on hand. It would therefore appear that the above claims should be paid the percentage that the total monies on hand is of the total claims—65.7%—and that no other claims can be paid."

Several responses were then filed to the court's order of April 18, 1988. Those responses objected to the above proposed manner of distributing the funds on hand in the estate. The Internal Revenue Service asserted a claim for taxes in the total sum of $59,987.72, to which the trustee objected as untimely filed. Counsel for the debtors, John C. Trader, Esquire, requested attorney's fees in the sum of $39,843.00. And special counsel Dennis J.C. Owens, Esquire, asserted a claim for attorney's fees based upon an order of the district court in case no. 87–0257–CV–W–1 granting him an award of certain attorney's fees.

Consequently, on August 5, 1988, this court issued a successive show cause order, still proposing to distribute the funds of the estate as above indicated and observing, with respect to the above responses to

---

**13.** Additionally, there appears to be a problem with the applicant's possible waiver of attorney's lien rights. They did not assert such rights by filing a proof of claim. In fact, the only proof of claim filed by them was based upon their supposed security interest in the same proceeds of judgment and their prebankruptcy fees and it was set aside as an avoidable preference.

the prior show cause order, (1) that the Internal Revenue Service claims appeared, as the trustee objected, to have been untimely filed, past the bar date of January 16, 1986; (2) that the attorney's fees claims of Mr. Trader appeared to be, according to a complete analysis of the services therein contained, not "in aid of administration of the estate" and therefore not compensable therefrom; and (3) that the claim of Dennis J.C. Owens for compensation could not be sustained because the subordination agreement made with Mr. Owens by Dr. Crisp and Dr. Taylor could not be regarded as supported by sufficient consideration, but rather only past consideration; that the attorney's lien asserted by him could not be regarded as perfected; and that, otherwise, the suits were settled by the trustee and his attorneys and not by Mr. Owens.

These three parties have again responded to the show cause order of August 5, 1988, to the following effect:

### The Internal Revenue Service

In its response to the court's order of August 5, 1988, the Internal Revenue Service pertinently states that its prior response "referred only to a request for payment of administrative taxes in the amount of $13,773.68 for income tax for 1985 and Withholding and FICA taxes for the third quarter of 1986. These taxes were set forth on a request for payment of administrative taxes, dated January 13, 1987, under 11 U.S.C. sections 507(a)(1) and 503(b). This was not a proof of claim under Bankruptcy Rule 3002. Thus, the Internal Revenue Service was not required to file this request for payment of administrative expenses by January 16, 1986, as stated in the Court's Show Cause Order dated August 5, 1988." With respect to the administrative expenses which arose during the course of the chapter 7 proceedings and not within the time then fixed for the filing of claims, the claim of the Internal Revenue Service should be allowed in the sum of $13,773.68. The above proposed computation will therefore be adjusted so to provide.

### Response of John C. Trader

In response to the court's interim conclusion that none of the services provided by him were "in aid of administration of the estate," Mr. Trader has responded with an extended description of some of the services in support of his contention that such services were, in fact, "in aid of administration of the estate." From the revised descriptions of the services which are now rendered—and which were not rendered when the court granted the evidentiary opportunity for this purpose—applicant counsel requests that the court draw the inference that, with respect to the efforts of the trustee to assemble the records which would detail the debtors' accounts receivable, it was the court-appointed accountant who failed to gather and arrange the documents in a sensible manner. Even if these factual contentions could be supported, however, they come too late, considerably after the hearing on the attorney's fees issue has been concluded. "(P)arties may offer evidence after trial has been completed and after judgment only if they demonstrate, on a timely served motion for new trial, that they have discovered new and material evidence which, in the exercise of due diligence, they could not have discovered in time for use at trial." *Matter of Annis*, 78 B.R. 962, 968 (Bkrtcy.W.D. Mo.1987). Nevertheless, even if the court could assume that the trustee's accountant bore the primary responsibility for the trustee's not being able to gather the documents which evidenced the existence of accounts receivable which may have been property of the estate, the fact remains that such documents were not gathered and that, accordingly, no benefit to the estate resulted from any of the efforts of counsel. And see 2 Collier on Bankruptcy para. 330.05(d), pp. 330–38, 330–39 (15th ed. 1988), to the following effect:

"The tangible benefit conferred on the estate and its creditors is clearly a proper measure of the appropriate compensation. Indeed, it has been suggested that 'The sine qua non of the allowance is the benefit the bankrupt's estate and its creditors have derived from the services rendered.'"

No benefit having been accorded to the estate by reason of counsel's efforts in this regard, it follows that, under this principle, no compensation should be afforded to applicant counsel for efforts which did not result in any tangible benefit to the estate. Further, as counsel knows, in other proceedings before the court in this bankruptcy matter, it has been rather clearly demonstrated that the trustee and his accountant were without fault in this matter and that it was the debtor and his counsel who staged a long course of resisting the trustee's demands for the records and who then finally represented that they had all been lost in certain computerware.[1] And the fact remains that no benefit was conferred on the estate by reason of any efforts in this regard.

■ Further, the files and records in this case show that, throughout the time periods for which compensation is now sought by Mr. Trader, he purported to be a prepetition creditor of the debtor with a security interest in property which he claimed to prevail over the interests of the estate. See *Rubin v. Trader and Owens*, Adversary Action No. 85–0721–2–3 (Bkrtcy. W.D.Mo. Oct. 27, 1986), app. dis. Civil Action No. 87–0778–CV–W–8 (Sept. 30, 1987). Under such circumstances, the courts have held with some uniformity that it is within the power of the bankruptcy court to deny fees when such a conflict of interest exists. See *In re Roberts*, 75 B.R. 402, 413 (D.Utah 1987), to the following effect:

> "The law firm, as a pre-petition creditor of the corporation, did not qualify as a 'disinterested person' and therefore was statutorily ineligible for employment. Section 328(c) specifically allows the court to deny attorney's fees and costs

---

1. See *Rubin v. Crisp*, Adversary Proceeding No. 86–0434–2–3 (Bkrtcy.W.D.Mo. Mar. 11, 1987), in which the following findings of fact were made: "A meeting of creditors was held on October 30, 1986, in the course of which Mr. Rubin (the chapter 7 trustee) inquired into the existence and location of the records of Dr. Crisp's accounts receivable in his medical practice. A creditor was then represented by Jack Bohm, Esquire, and was seeking relief from the automatic stay in respect to the computer in which the records of accounts receivable were contended by Dr. Crisp to have been kept. At the meeting of creditors, Mr. Bohm pointed out that he had had a motion for relief from the automatic stay on file for more than 30 days; that it had not been acted on by former Judge Pelofsky within that 30 days; and that, therefore, it was his position that, with respect to the computer apparatus, the automatic stay was automatically dissolved by operation of section 362(e) of the Bankruptcy Code, requiring a hearing within 30 days of the motion's filing if the stay were to remain in effect. At Mr. Rubin's request, Mr. Bohm agreed to refrain from repossessing the computer until after the court had acted on the motion. At this point in the colloquy between Mr. Rubin and Mr. Bohm, Dr. Crisp interjected to state that the accounts receivable information was on a disc in the computer. Whereupon, the trustee, Mr. Rubin, admonished Mr. Bohm to be careful in repossessing the computer apparatus so that the discs containing accounts receivable information would not also be repossessed. The parties explicitly stipulated in the hearing of this action that, at the meeting of creditors of October 30, 1986, Mr. Rubin made it quite clear that he was claiming a right to all information which was available concerning Dr. Crisp's accounts receivable and to all existing accounts receivable. Shortly thereafter, relief from the automatic stay was obtained by Mr. Bohm's client and its representatives repaired to the office of Dr. Crisp for the purpose of repossessing the computer. Dr. Crisp was personally present for this repossession and had an unfettered opportunity to observe it. He made no protest that the repossessing parties were taking anything which they had no right to repossess.... Robert A. Pummill, the attorney for the trustee in bankruptcy, shortly after the meeting of creditors, repeated to John H. Trader, counsel for the debtors, a demand which Mr. Rubin had made in the course of the meeting of creditors that amended schedules be filed containing a list of all accounts receivable. Mr. Trader responded by providing certain statistical material respecting accounts receivable, but declined to submit a list of the names of account debtors and their addresses, claiming privileges for that information, ranging from a claim that the subject accounts receivable were 'exempt' under the rule of *In re Fitzsimmons*, 725 F.2d 1208 (9th Cir.1984), to a claim of confidentiality of patient names ... The evidence does not show how, precisely, these claims of 'privilege' were 'worked out' and settled between the parties, but it was Dr. Crisp's clear testimony that his concerns respecting these privileges dissipated and that he became willing to turn over to the trustee any and all documents which he had relating to any and all of his accounts receivable. Nevertheless, according to the testimony of Mr. Pummill, when he again requested of Mr. Trader that all relevant documentary materials be produced, Mr. Trader represented to him that all the information available had been on the computer discs and that there was no other material on accounts receivable in existence."

*at any time* during employment that counsel is not a disinterested person or holds or represents an interest adverse to the estate. Although section 328(c) does not mandate the denial of fees, the clarity of the statutory ineligibility and the assertion by affidavit that the law firm was disinterested, when in fact it was not, warrants the denial of fees and costs ..."

See also *In re Pierce,* 809 F.2d 1356, 1363 (8th Cir.1987), to the following effect:

"(T)here are two other grounds upon which the court could have denied (attorney's) fees. First, under Section 327(a), an attorney may be disqualified not only because he or she is not disinterested, but also because the attorney holds an 'interest adverse to the estate.' 11 U.S. C. section 327(a). At least one court has held that an attorney's pre-petition mortgage on the debtor's real estate constitutes an 'adverse interest' under Section 327(a). *In re Martin,* 59 B.R. 140, 143 (Bankr.D.Maine 1986); *see also In re Roberts,* 46 B.R. 815, 849 (Bankr.D.Utah

1985) (attorney's pre-petition debt for legal fees for services not rendered in connection with bankruptcy case would constitute an adverse interest). Thus, the court could have denied compensation on this ground."

Accordingly, separately and independently, compensation will be denied for the reason that applicant counsel had an adverse interest to the estate during the time periods for which he now seeks compensation.

The same principles apply to the other aspects in which applicant counsel currently attempts to resurrect certain vague and indefinite entries which he made on the detailed statement which he initially submitted in support of his claim for fees. It is now too late, after a full evidentiary hearing has been accorded, to attempt to offer evidence which would support an award for fees. Further, the explanations which are now offered are, as more fully pointed out in the footnote which follows,[2] themselves too vague and general.

It is therefore concluded that Mr. Trader's belated application for an award of

2. With respect to services which this court, in its prior order, characterized as those rendered defending the debtors' interests against certain creditors, Mr. Trader has rejoined that these services were rendered in support of the trustee's objections to claims of certain claimants. But the fact remains that these particular services are so sparsely and insufficiently described that this court is unable to ascertain whether the services were simply duplicative of those performed by the trustee or whether they were unnecessary, volunteered services, or both. Further, with respect to certain services, the *descriptions of which the court has previously* characterized as vague and indefinite, Mr. Trader states:

"Debtors' counsel wishes to further supplement those entries in order to allow the Court to conclude that a more meritorious showing has now been made to justify an award of fees from the bankruptcy estate. The trustee made the decision to sell debtors' personal residence. Debtors' counsels' above enumerated services were in connection with that sale. As indicated above, these services involved numerous conferences with trustee's counsel, with the debtors, with the realtors, with the title insurance company, the review of documents, all of which were in aid of the administration of this estate in that the personal residence was sold thereby creating additional funds to satisfy allowable claims."

Again, however, the descriptions are insufficient to permit the court to determine whether the

services which counsel apparently volunteered to the trustee were indeed necessary and whether they did more than duplicate services provided by the trustee and his counsel. Similarly, with respect to certain other services rendered in September 1985, totaling 18.1 hours, Mr. Trader now states:

"A substantial amount of work was required of debtors' counsel in aid of the administration of this estate in connection with its conversion to a Chapter 7 proceeding. These services included numerous conferences with trustee's counsel in effecting that conversion; compliance with information requests required either by the Court (in the form of final reports, final schedules, etc.) or those of the trustee or trustee's counsel; conferences with debtors; and appearance at the creditors' hearing and meeting with the trustee and trustee's counsel subsequent thereto."

If more fully described, these services might be compensable as being "in aid of administration of the estate." But the description, such as it is, has come untimely. Further, under the rules expatiated in the text of this memorandum—of *In re Pierce,* 809 F.2d 1356, 1363 (8th Cir.1987), and *In re Roberts,* 75 B.R. 402, 413 (D.Utah 1987)—this court may decline to award any attorney's fees because of the applicant's conflict of interest as a prepetition creditor of the debtors.

attorney's fees, for the reasons stated in the prior orders and the reasons stated above, must be denied.

### The trustee's attorney's fees

Mr. Trader also contends that it is now incumbent upon the court to consider his contention that the trustee's having received some $30,612.50 in attorney's fees during postconversion administration resulted "in the trustee's counsel receiving a disproportionate amount in excess of that received by others determined by the Court's April 18, 1988 order to be in the same class, or otherwise legally includable by reason of said Court order ... in the same class of postconversion administrative claims as that of trustee's counsel." In respect of the *ad interim* awards which have been made to trustee's counsel, however, the files and records in this case clearly show that they were made only after the court had issued show cause orders addressed to all interested parties and had granted them an opportunity to object to them and no objection was served or filed by any party. Thus, notice and an opportunity for a hearing has been accord-

ed and, in retrospect, the fees awarded to trustee's counsel are reasonable.[3]

### The attorney's fees of Dennis J.C. Owens

In its prior order, this court pointed out that the attorney's fees of the attorney, Dennis J.C. Owens, could not be regarded as superpriority fees because the services were rendered in the course of the chapter 11 proceedings and prior to the time when the within chapter 7 proceedings came into effect on August 30, 1985. In his response to that order, Mr. Owens takes exception with this basic proposition, stating that "(t)his entitlement arose when the settlement occurred and the proceeds flowed to the estate. The settlements both took place *after* conversion of this case on August 30, 1985. Thus, it (the fee application) does have superpriority status." The critical wording of the superpriority statute, however, section 726(b) of the Bankruptcy Code, is to the effect that superpriority depends upon whether the expenses were "incurred" during the postconversion period. The statute thus reads:

" ... in a case that has been converted to this chapter (7) under section 112, 1208

---

**3.** Further, if the court were required to review the several applications again, it would find that the fees which were awarded were reasonable. The "lodestar" award has been calculated with respect to each of the applications in accordance with the hourly rates and total hours submitted on the respective detailed statements supporting the ad interim applications. "According to the current of authority in this district, this should be determined by simply acceding to the applicant's characterization of the number of hours which he has worked and multiplying by the hourly rate asserted by him." *Matter of Broady,* In proceedings for straight liquidation under chapter 7 of the Bankruptcy Code No. 87–05422–SJ (Bkrtcy.W.D.Mo. Aug. 23, 1988). It is next incumbent upon the court to determine whether the "lodestar" award should be enhanced or decreased according to relevant factors. "Once the nature and extent of the services rendered have been determined, the bankruptcy judge must assess the value of those services." *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1300 (1st Cir.1977). An "additional factor the ... court must consider is the extent, if any, to which the quality of the attorney's work mandates increasing or decreasing the amount to which the court has found the attorney reasonably entitled." *Lindy Bros.*

*Bldrs., Inc. of Phila. v. American R. & S. San Corp.,* 487 F.2d 161, 168 (3d Cir.1973). "The tangible benefit conferred on the estate and its creditors is clearly a proper measure of the appropriate compensation ... It has also been suggested that when the benefit conferred on the estate is particularly great, the court should award a 'premium' or 'lodestar enhancement principle' in addition to compensation at customary hourly rates. Conversely, where the quality of the services rendered is poor or the size of the estate is insufficient to satisfy the claims of creditors, allowances of compensation should be accordingly reduced." 2 Collier on Bankruptcy para. 330.05, pp. 330–38, 330–39, 330–40 (15th ed. 1988). In this case, the court's task is simplified by reason of the fact that trustee's counsel do not request any enhancement of the "lodestar" award and the basic facts concerning administration of the estate and collection of assets demonstrate that trustee's counsel have been instrumental in bringing more than $100,000 into the bankruptcy estate. Additionally, as is observed in the text of this memorandum, it has been necessary for them to prosecute an objection to discharge, which is still pending on appeal. Accordingly, the court concludes that no decrease in the "lodestar" award is warranted.

or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title."

In order to be granted "superpriority" status, it is necessary that the services for which compensation is sought be "performed" during the course of postconversion liquidation. *In re Codesco, Inc.*, 18 B.R. 225, 227 (Bkrtcy.S.D.N.Y.1982). In respect of Mr. Owens' request for fees, the detailed statement which he filed in support of them on May 14, 1986, conclusively shows that all but a negligible few of the services rendered were rendered prior to August 30, 1985, and thus cannot be regarded as expenses "incurred" during the chapter 7 proceedings.[4]

Mr. Owens goes on, in his response of August 25, 1988, to contend that the work which he has done in the past does not constitute "past consideration" and therefore not good consideration to support the subordination agreements which he earlier exacted from Dr. Crisp and Dr. Taylor. Rather, he states, because he had not yet made the claim therefor against Dr. Crisp, the consideration must be regarded as current, not past, consideration, and therefore good consideration. The prior legal work, however, was done pursuant to and in the performance of an entirely separate, and prior, contract—the contract under which the legal fees are now claimed. It cannot, therefore, provide consideration for an entirely new and separate subordination agreement. This contention must therefore be rejected. Once distribution of the estate is made, it is wholly within the discretion of Dr. Crisp and Dr. Taylor as to whether they should pay monies on this or on any account to Mr. Owens. But, on the basis of the record before it, supplied in the course of an evidentiary opportunity granted by the court, this court cannot find that the subordination agreements are supported by good consideration, as the cases require.

With respect to the court's granting, by reason of its prior order, an explicit opportunity to demonstrate that he had perfected his attorney's lien, and therefore elevated it above the claim of the estate in bankruptcy, Mr. Owens rejects that opportunity. Rather, he states simply: "No notice to defense counsel is necessary!" But the law clearly states otherwise and to the effect that any lien can come into effect only "from the date of service of said notice (to the defendant or defendants)." Section 484.140 RSMo. In order to be effective to create the lien, the notice must state that "the attorney has a contingent fee contract (and) ... the percentage or amount which the contingent fee contract gives him." *Passer v. U.S. Fidelity & Guaranty Co.*, 577 S.W.2d 639, 646 (Mo. en banc 1979). Mr. Owens cites no cases which, under the current statute relieve attorneys of the duty to perfect their lien in this manner.[5] This court must therefore reject his claim that his attorney's lien predominates over the other creditors.

The other contentions raised by Mr. Owens in his current response have been previously adequately treated by the court and are without merit for reasons stated in the court's prior orders.[6]

---

4. The detailed statement which was submitted by Mr. Owens purports to show that only a smattering of services—some 16.2 hours—were rendered after the date of conversion, August 30, 1985. And the descriptions of those alleged services leaves considerable doubt, because of the generality, as to whether those services were necessary or conferred any benefit on the estate.

5. There are some Missouri cases, which appear to antedate the current statute, which excuse strict compliance with the notice requirement, e.g., *Stiles v. Cooter Gin Co.*, 74 S.W.2d 1092 (Mo.App.1934). But these certainly cannot have current viability in view of the exacting notice requirements imposed by *Passer v. U.S. Fidelity & Guaranty Co.*, 577 S.W.2d 639, 646 (Mo. en banc 1979).

6. Further, the reasons stated in the text of this memorandum are sufficient reasons for not according superpriority status to Mr. Owens' attorney's fee claim.

**898**

*Order of Distribution*

In accordance with the foregoing considerations, it is hereby

ORDERED that, within 15 days of the date of filing of this order, the trustee in bankruptcy submit to the court a final report and proposed order of distribution based upon allowance of the following claims as superpriority claims pursuant to section 726(b) of the Bankruptcy Code:

| | |
|---|---:|
| Internal Revenue Service | $ 13,773.68 |
| State and city tax claims | 15,500.00 |
| trustee's attorney's fees | 2,000.00 |
| N. Denny Crisp, compensation | 45,593.12 |
| Judith Taylor, compensation | 23,276.87 |
| Examiner fees (Dennis Dow) | 2,931.08 |
| Mo. Div. of Finance 1983 and 1984 property taxes | 1,983.89 |
| Total | 105,058.64 |