**In re ROBERT E. DERECKTOR OF RHODE ISLAND, INC., d/b/a Derecktor Shipyard.**

**Bankruptcy No. 92–10015.**

United States Bankruptcy Court, D. Rhode Island.

March 19, 1993.

See also 150 B.R. 296.

Allan Shine, Winograd, Shine & Zacks, P.C., Inc., Christopher H. Little, Tillinghast Collins & Graham, Providence, RI, for debtor.

Marcia McGair Ippolito, Chief Legal Officer, R.I. Div. of Taxation, Providence, RI, for Rhode Island Div. of Taxation.

John P. Gyorgy, Adler, Pollock & Sheehan Inc. Providence, RI, for Rhode Island Port Authority and Economic Development Corp.

· Richard M. Peirce, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, RI, for United Steelworkers of America.

Jason Monzack, Kirshenbaum & Kirshenbaum, Cranston, RI, for Unsecured Creditors' Committee.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Before us is the application for compensation of Christopher H. Little, Esq. of the firm Tillinghast, Collins & Graham (TC & G), as special counsel to the Debtor in this liquidating Chapter 11 case. At the hearing on said application held on October 29, 1992, the Rhode Island Division of Taxation, a creditor with a claim in excess of $2 Million, was not present. In light of the size of the request, and because the amount of compensation awarded could affect the dividend to the Division of Taxation, we solicited the Administrator's position regarding the application. In response, the Administrator did not object to the amount of the fee requested, but instead disputes the priority status of *any* award, vis-a-vis the secured claim of the Rhode Island Division of Taxation. Several other creditors and the United States Trustee, however, have raised objections to the amount of the request. We will first address the lien priority argument of the Tax Administrator, and then will consider the arguments as to the amount of the request.

## BACKGROUND

In September, 1988, Robert E. Derecktor of Rhode Island, Inc. engaged Mr. Little and the firm of Tillinghast, Collins & Graham (Applicant) to contest Insurance Company of North America's (INA) disclaimer of liability on certain payment and performance bonds. Legal work was performed for Derecktor on an hourly rate until January 1, 1989, when Little agreed to base future compensation on a one-third contingency arrangement. Prior to this change, the legal services involved obtaining injunctive relief, while under the new arrangement the claim was primarily one for the recovery of money damages, which the Applicant aggressively pursued against INA

in the Newport County Superior Court. Mr. Little's efforts eventually resulted in a settlement in November 1991, in the amount of $2.5 Million. Before the agreement was finalized, however, Derecktor filed its Chapter 11 petition on January 3, 1992, and on September 25, 1992, this Court approved the compromise, which provided for $650,000 to be paid to the Debtor's estate, with the remaining $1,850,000 to be set aside to satisfy pending Miller Act claims. Any funds remaining after determination and payment of the Miller Act claims will revert to the Estate.

In its opposition to the payment of *any* attorney's fee from this settlement, the Division of Taxation contends that its claim to said fund is superior to Little's because it recorded notice of its tax lien and obtained a writ of execution *before* Little recorded notice of his attorney's lien. The Tax Administrator's lien was recorded in the Middletown Town Hall on May 3, 1991, and on November 12, 1991, a writ of execution was obtained in the amount of $2,115,-230.43. Little recorded his lien with the Town Clerk of the Town of Middletown on November 21, 1991.

## DISCUSSION

### A. *Interpretation of R.I. Gen. Laws § 9–3–1 et seq.*

The attorney's lien priority issue, which appears to be one of first impression in this jurisdiction, involves whether an attorney's lien, based upon R.I. Gen. Laws § 9–3–1 *et. seq.*, on a particular fund created through the attorney's efforts, takes priority over other liens filed against that fund. For the following reasons, we conclude that it does.

A lawyer's charging lien has its roots in the common law and in equity, to secure payment for an attorney who obtains a judgment or award for his/her client. *See* 7 Am.Jur.2d *Attorneys at Law* § 324. In addition, Rhode Island has enacted a statutory basis for such liens. *See* R.I. Gen.

Laws §§ 9–3–1 through 9–3–3. Pursuant to those sections, "[w]henever the relationship of attorney and client has been entered into by an implied or express contract for service, wherein the attorney does *not* agree to be responsible for costs of suit,[1] the attorney shall have a lien to the value of his contractual interests in the cause of action...." R.I. Gen. Laws. § 9–3–1 (emphasis added). The attorney's right to payment begins to operate as a lien "[f]rom the time notice is given by an attorney of the said relationship of attorney and client to the person or party against whom a claim, demand or counterclaim is made, or a cause of action or other matter is pending...." R.I. Gen. Laws § 9–3–2.

Although § 9–3–2 does not address the relative priority of the attorney's lien vis-a-vis conflicting liens, the plain and unambiguous language of the statute negates the argument presented by the Division of Taxation. Specifically, the Tax Administrator asserts that, under the statute, he is an "adverse claimant" entitled to receive notice of the attorney-client relationship, which he did not receive until November 21, 1991 when TC & G recorded notice of its lien, and therefore as to the Tax Administrator, Little's lien did not come into existence until that time. The Tax Administrator incorrectly reads § 9–3–2. Under that section, there is no requirement that notice be given to "adverse claimants," or any other claimants, for that matter. Rather, it only provides for notice to "the person or party against whom a claim, demand or counterclaim is made, or a cause of action or other matter is pending...." R.I. Gen Laws § 9–3–2. Here, INA is the party against whom a claim was made, and only INA was entitled to notice of the attorney-client relationship.

■ Accordingly, we conclude as a matter of law that once the fund came into existence, the Applicant's statutory lien automatically attached to it, was perfected,

---

1. The contingency fee letter agreement between the parties (Ex. D, Application for Award of Fees and Expenses for Special Counsel) provides at page two that the Applicants will be responsible for one-third of the costs of litiga-tion. However, because the agreement contains several other provisions that are contradictory, the resulting ambiguity renders the exclusionary language of § 9–3–1 inapplicable here.

and is superior to prior filed liens against the Debtor.[2] Although we were unable to locate any Rhode Island cases construing this provision, an analogy can be drawn to "purchase money security interests" as they are treated in the Uniform Commercial Code. *See* U.C.C. §§ 9–107, 9–301(2), 9–312(3)–(4). Such security interests, when properly perfected, have priority over conflicting security interests in the collateral because, but for the purchase money secured lender, the collateral would not exist. Similarly, since it is the services rendered by the attorney which result in the creation of the fund in question, that attorney is given a statutory priority interest in such fund which is superior to all other liens against the property.

B. *Relation Back for Perfection Purposes*

◼ Although our ruling above is dispositive of the lien priority issue, for completeness of the record and for possible appellate purposes we will address the Tax Administrator's second argument, i.e. that *if* notice was required to be given to the Division of Taxation, the lien filed by the Applicant was not perfected prior to the Division of Taxation's November 12, 1991 lien, but occurred at the earliest on November 21, 1991 when Little recorded his lien. Little responds that perfection of his lien relates back to the date when he commenced rendering services, i.e. January 1989, which is prior in time to the Division of Taxation's November 12, 1991 lien.

On this issue we agree with Little's argument that the formal notice of lien filed on November 21, 1992 would relate back to when the services were first rendered, and therefore, even under this scenario, his lien was perfected prior to that of the Division of Taxation. *See In re Sea Catch, Inc.*, 36 B.R. 226, 234–235 (Bankr.D.Alaska 1983) (held that an attorney's lien relates back to commencement of service under similar

Alaska statute). The legal authorities relied upon by the Tax Administrator are inapposite, and not useful as precedent here. Those cases deal primarily with attorneys who failed to meet the procedural notice requirements of their respective state statutes. *See In re Crisp*, 92 B.R. 885, 897 (Bankr.W.D.Mo.1988); *In re Pierce*, 809 F.2d 1356, 1359–61 (8th Cir. 1987); *In re Nicholson*, 57 B.R. 672, 675 (Bankr.D.Nev.1986). As noted earlier, we do not have that problem here.

C. *Objection to the Amount of Fee Requested*

◼ Finally, because the United States Trustee and several creditors objected to the amount of the fee requested, and although Mr. Little has voluntarily and substantially reduced his fee,[3] it remains our responsibility to scrutinize the reasonableness even of the present request. *See In re Bank of New England Corp.*, 134 B.R. 450, 453 (Bankr.D.Mass.1991), *aff'd*, 142 B.R. 584 (D.Mass.1992). In his objection, the U.S. Trustee points out that approximately 1600 hours were spent on this matter, resulting in a blended hourly rate of $222, which he argues is excessive in this jurisdiction as an "across the board" rate. The U.S. Trustee recommends that compensation be allowed in the amount of $320,-000, including expenses.

We appreciate the U.S. Trustee's review and assistance in this matter, and seek his continued input in *all* cases, but in light of the Applicants' voluntary reduction of $448,333 from his contractual entitlement, and considering the benefit to the estate of said services, we find the present request of $385,000 to be reasonable. We agree with the U.S. Trustee that a $222 hourly rate, without more, is excessive in this jurisdiction, but having in mind the existence of a valid pre-petition contingency arrangement, which is relevant in our consideration

---

**2.** Although the issue of when INA first received notice of the Applicant's attorney-client relationship was not raised, based upon the record, we find that this event occurred *at least as early as* January 1989, when TC & G filed a claim for damages against INA on Derecktor's behalf.

**3.** The Applicants have agreed to reduce their one-third contingency fee of $833,333 to $385,-000, inclusive of all time and expenses incurred.

herein,[4] and the fact that counsel has achieved a substantial recovery for the Bankruptcy Estate, as well as the Miller Act claimants, the present request is justified and reasonable, in these circumstances.

Accordingly, the Application of Christopher Little, Esq., of Tillinghast, Collins & Graham, for compensation as special counsel to the Debtor is ALLOWED, in the amount of $385,000.

Enter Judgment consistent with this opinion.

---

**4.** The Applicants assumed a substantial risk in accepting the engagement on a contingent fee basis, and we have taken that risk into account in setting Mr. Little's fee. This decision is fact specific and does not establish that an hourly rate of $222, per se, is reasonable in this jurisdiction.